## Case No. 9,010.

MANDEVILLE et al. v. COOKENDORFER.

[3 Cranch, C. C. 397.] [1]

Circuit Court, District of Columbia. Dec. Term, 1828.[2]

PRINCIPAL AND AGENT — ACTION FOR DAMAGES FROM NEGLIGENCE—WHO LIABLE—SLAVERY—ESCAPE.

1. For negligence of an agent, his principal only is liable.

2. It is negligence in a stage-office keeper to suffer a slave to go off in the coach by means of a false certificate of freedom; and the stage owners only are liable for the damages.

Action on the case, for negligence of a stage-office keeper, in suffering the plaintiff's slave to escape, by permitting him to go in the stage coach to Baltimore under a false pass. This cause having been tried upon the new venire issued by order of the court at December term, 1827 [Case No. 9,009], the jury found a verdict for the plaintiffs, with $200 damages, subject to the opinion of the court, whether the action would lie against the office-keeper, the agent of the owners of the coach.

Mr. Swann, for plaintiffs.
Mr. Key, for defendant.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, dissenting). The declaration consists of two counts. The first count charges that the plaintiffs were owners of the slave Richard Bunbury; that the defendant was "the keeper and superintendent, and had the management and control of a stage-office for the entry of lawful passengers traveling from the city of Washington to Baltimore," "and had the management, superintendence, and direction of that part of said line of stages which leaves Washington city for and on the route to said Baltimore; and the said Cookendorfer, not regarding his duty in that behalf, took so little and such bad care of, and conducted himself so negligently, carelessly, improperly, and unlawfully, in the

1 [Reported by Hon. William Cranch, Chief Judge.]
2 [Affirmed by supreme court, case not reported.]

management of the said line, or part of line, of stages, and the office for such stages, line, or part of line of stages, in the said county, that the said" slave, the property of the plaintiffs, "was by and through the carelessness, misdirection, mismanagement, negligence, and unlawful conduct of said defendant, permitted, suffered, and allowed, and by him unlawfully, carelessly, and negligently authorized and enabled to take a seat and passage in the said line of stages, or one of the stages of the said line," "and to be therein and thereby carried and taken out of and beyond the county and District of Columbia aforesaid, and out of and from the control of the said plaintiffs, and thereby caused" them to expend a large sum of money in recovering him, and to lose his services for eighteen months, &c. The second count charges that the defendant was "the keeper of the stage-office for the line of stages which runs to and between and on the route to and between the city of Baltimore in the state of Maryland, from the city of Washington in the said county of Washington," "and had the control and management of the same, and the superintendence of all passages taken and entered on the books and way-bill for and in the said line and route of stages for said city of Washington; and it was then and there his duty as such superintendent, not to furnish or suffer, or in anywise aid any slave for life to make and effect his escape from the ownership, control of, or servitude to his lawful master or masters, by means of, or through the said stage-line, or stage-office, or by, or in any manner or mode of conveyance under or within his control, as superintendent of such line of stages or stage, belonging or connected to or with the said line or route or office. Nevertheless, the said Thomas Cookendorfer, not regarding his duty aforesaid, wrongfully, negligently, carelessly, and unlawfully, did, on the 28th of September, in the year 1825, at," &c., "without the consent of the plaintiffs, or either of them, suffer, allow, and give permission to and aid the said negro, and carelessly, negligently, and unlawfully permitted and aided him, the said negro R. B., the property of said plaintiffs, to take passage and conveyance in the said line or route of stages, or one of the stages of the said line or route from Washington city to, and on the route to Baltimore," "and to be therein conveyed and carried out of the county and district aforesaid, and out of the reach and control of the said plaintiffs," whereby they lost his services, &c., and were forced to expend a large sum of money in recovering him, &c.

The case stated is, that the said slave eloped from the plaintiff's service in Alexandria and went to Washington City, and there called himself Seymore Cunningham; and showed a certificate from a notary-public, which had been granted to Seymore Cunningham, stating that he, the said S. C., was a free man of color; and that the said slave,

Richard Bunbury, stated that he was, in fact, the said Seymore Cunningham. Evidence was offered to prove that "the person described in the said certificate did not correspond with the person of the said R. B.; that he was taller than the person described in the certificate, and was a very bright mulatto, whereas Cunningham, the person described in the certificate, was a dark mulatto," and "that the least attention on the part of the defendant would have detected the difference, as the witnesses thought." That the slave went to the stage-office in Washington City, which office was of the line of stages mentioned in the declaration, kept and managed by the defendant, and represented himself to the defendant as Seymore Cunningham, and showed his said certificate of freedom; and the defendant thereupon permitted him to take his seat in the book of the said stage-office, kept and managed as aforesaid by the defendant, and permitted him to take passage in the stage of the said stage-line mentioned in the declaration, and the said slave went off in the said stage to Baltimore, and from thence to Boston. That the instructions given by the stage-line owners to the clerks in the said stage-office, and the practice and usage in relation to allowing seats to be taken in the stages of the said line, by colored persons, were these:—"That the clerks were to allow free persons of color to take seats, and not slaves, except with their owner's permission; and that, in order to determine whether the persons of color, offering to take seats, were free or slaves, the said clerks were required to demand that they should produce certificates of freedom; and upon so producing such certificates, purporting to prove the freedom of the persons presenting themselves, they were to permit such persons to take seats as free persons, and were not required to ascertain in any other way than by production of such certificates, whether the said colored persons were free or slaves."

The declaration charges the defendant, as keeper and superintendent of a stage-office. These expressions imply an agency, not an ownership; and the case stated admits that there were owners of the stage-line, other than the keeper of the office. The defendant, therefore, is to be considered as the agent of the owners of the stage-line; and the question arises whether the defendant, who, it appears by the statement of facts, obeyed the instructions of his superiors, is liable to the plaintiffs in an action upon the case for negligence. The negligence upon which the action is founded consisted in not sufficiently examining the certificate of freedom produced, and comparing the description it contained with the person of the slave who brought it.

The authorities cited by the plaintiff's counsel, to show that the action for negligence will lie against the agent, or servant, are Bush v. Steinman, 1 Bos. & P. 404; Stone v. Cartwright, 6 Term R. 411; Stephens v. El-

wall, 4 Maule & S. 259; Little v. Barreme, 2 Cranch [6 U. S.] 179; and 1 Chit. Pl. 67. The case of Bush v. Steinman, was an action against the master; and the question did not arise, whether the servant was liable for laying the lime in the road, by which the plaintiff's carriage was overturned. But Mr. Justice Rook said: "The plaintiff may bring his action either against the person from whom the authority flows, and for whose benefit the work is carried on, or against the person by whom the injury was actually committed." This is but a dictum, and it is evident that the judge was not contemplating the distinction between actions for negligence and actions for misfeasance, and the case before him was rather a case of misfeasance than of negligence; the laying of the lime in the highway being in itself a nuisance. That dictum, therefore, may and ought to be considered as applicable only to the case of misfeasance. The next case cited is Stone v. Cartwright, 6 Term R. 411. That was an action against a "middle-man." It was neither against the person by whom the injury was actually committed, nor the person from whom the authority flowed, and for whose benefit the work was carried on. But Lord Kenyon said: "In all these cases I have ever understood that the action must either be brought against the hand committing the injury, or against the owner, for whom the act was done." The act complained of in that case was the digging under the plaintiff's house, in a mine or coal-pit, so negligently as to injure the building. The reporter states that, at the trial, "Lord Kenyon was of opinion that the action could not be maintained against the defendant, who was the middle-man, but that it ought to have been brought either against the person who actually committed the trespass, or concurred therein; or against the superior, the owner of the colliery, for whose benefit the work was carried on." In this case the attention of the judge was not drawn to the distinction between cases of negligence and cases of misfeasance; but it is evident that he was contemplating the case of misfeasance. The next case is Stephens v. Elwall, 4 Maule & S. 259. That was a case of trover for the plaintiff's goods, received and disposed of by the defendant, for the benefit of his master. The court held it to be a conversion, and the defendant to be a tortfeasor, a wrongdoer. This, therefore, was not a case of negligence, but of misfeasance. So, also, was the case of Little v. Barreme, cited from 2 Cranch [6 U. S.] 179, in which C. J. Marshall says: "The instructions cannot change the nature of the transaction, or legalize an act, which, without those instructions, would have been a plain trespass." Chit. Pl. in page 67, only says, that all natural persons are liable to be sued for their own tortious acts. None of the authorities cited supports the doctrine, that the servant is personally liable to a third person for his negligence, in transacting the business of his master; and that he is not so liable is

clearly shown by the following authorities. 1 Chitty on Pleading (volume 1, p. 75) says: "A servant or deputy cannot, in general, be sued for a mere nonfeasance; but the action must be against the principal. But, for misfeasance or malfeasance, an action may, in some cases, be supported against a servant or deputy"; and cites 12 Mod. 483; Cowp. 403. The same principle is cited by Paley on Agency (page 313, c. 6, § 2), who says: "Servants are responsible for tortious acts, whether done by authority of their masters or not; but for mere nonfeasance, or non-performance of duty, servants are not liable to third persons, but only to their masters. For there is no privity of consideration between the servant and the person who employs his master; and nonfeasance alone will not support an action, without consideration, though misfeasance will."

We find the principle thus stated by Lord C. J. Holt, 12 Mod. 488: "A servant or deputy, as such, cannot be charged for neglect, but the principal only shall be charged for it; but, for misfeasance, an action will lie against a servant or deputy, but not as a deputy or servant, but as a wrongdoer." This doctrine has been repeated and ratified in a subsequent case, Sayer, 41. "The case of masters of ships, who, though in some respects servants of the ship-owners, are liable to the owners of goods put on board, for negligence, rather admits than contradicts the principle of this rule; for, in the case which decided that point (Morse v. Slue, 1 Vent. 190, 238), to the objection that the master was but a servant to the owner, it was answered, that the law takes notice of him as more than a servant. He may impawn the ship, and sell bona peritura; he is rather an officer than a servant." So in the case of Rowning v. Goodchild ([2 W. Bl. 907;] cited in 5 Burrows. 2716), a deputy-postmaster, the same general principle is admitted; and that case is taken out of it, by saying that postmasters "are subsisting, substantial officers, and answerable for their own misfeasances and nonfeasances. They have original offices under the postmaster-general." So Blackstone, in his Commentaries (Book 1, p. 431), says: "If a servant, by his negligence, does any damage to a stranger, the master shall answer for his neglect: if a smith's servant lames a horse while he is shoeing him, an action lies against the master and not against the servant." And Chitty, in his note to this passage of Blackstone, says: "A servant cannot, in general, be sued by a third person for any neglect or nonfeasance which he is guilty of, when it is committed in behalf of, and under the express or implied authority of his master." So also Starkie on Evidence (part 4, p. 332) says: "An action for negligence of this nature must be brought against the principal, and not against the agent, although the loss has resulted from the negligence of the latter." Other cases might be cited to the same effect; but these are deemed sufficient to establish the principle, that the servant is not liable for the injury done to a third person, by his negligence in his master's employment. This principle, coincides with the maxim, respondeat superior, and is reasonable in itself; for the servant could not, to an action by the injured person against him, plead the orders of his master in justification; nor could the servant maintain an action against his master for indemnity, even if what he did was in obedience to his master's orders. But if the injured person recover against the master, and he brings his action against his servant, the latter could plead his master's orders in bar of the action. If, then, the principle be established, that the servant is not liable for his negligence or nonfeasance, but is liable for his misfeasance, the next question is, whether the case stated be a case of misfeasance or of negligence.

The case, as I understand it, is, that the defendant was imposed upon by the slave, who produced a false pass. If the defendant had been more cautious, he might not have been deceived. The fault of the defendant was his negligence. But, according to the facts stated, he was not bound, by his orders, to be more vigilant than he was. By those orders, he was to permit every colored person to pass who could produce a certificate purporting to prove the freedom of the person presenting it. The negligence, therefore, was not so much the negligence of the defendant as of his employers, in not giving orders for a stricter examination. There is no tortious act of the defendant's stated in the case. His suffering a man to take a seat in the stage-coach was a lawful act if he was a free man; and his certificate was prima facie evidence of his freedom. Negligence, therefore, is the only ground upon which the action could be sustained. But, for such negligence, we find that the defendant is not liable; and are, therefore, of opinion that the verdict should be set aside, and judgment of non-pros entered.

When this court, in a prior stage of this cause, decided that one of the counts was good, the fact did not appear, (or was not relied upon,) that the defendant was only an agent, or servant; and the attention of the court was not drawn to the distinction between the liability of a servant, in cases of negligence and in cases of misfeasance. If, upon the motion in arrest of judgment, that fact had clearly appeared upon the face of the count, and the attention of the court had been drawn to it, it must have adjudged that count to be bad also.

Affirmed by supreme court of United States, February 26, 1830, but not reported. (See the mandate No. 317, trial-docket of this court, at May term, 1830.)