NORTHWESTERN MUT. LIFE INS. CO. v. SEAMAN et al.

(Circuit Court, D. Nebraska. May 3, 1897.)

1. OFFICERS OF COURT—APPOINTMENT—RELATION TO JUDGE.
   The provision of 24 Stat. 552, that no federal judge shall "hereafter" appoint to any office or duty in the courts a person related to him within the degree of first cousin, does not invalidate such an appointment previously made.

2. CLERK OF COURT—APPOINTMENTS—MASTER—FORM OF ORDER.
   An order appointing a clerk of a federal court as master in chancery without assigning a special reason therefor, as required by 20 Stat. 415, is sufficient, however irregular, to clothe him with insignia of the office, so that his acts will be those of a de facto incumbent, and not subject to question in a collateral proceeding.

3. JUDICIAL SALES—VACATING APPOINTMENT.
   Under the Nebraska statute, giving judgment debtors the right to have their property appraised, and providing that it shall not be sold for less than two-thirds its appraised value, an appraisement cannot be set aside, as too low, where fraud in the appraisement is not alleged.

Bartlett, Baldridge & Debord, in support of exceptions.
Howard Kennedy, Jr., opposed.

MUNGER, District Judge. This case is on hearing to exceptions filed to the master's report of sale of real estate under a decree of foreclosure, and to set aside the appraisement. The exceptions, though several in number, present ·but two questions, viz.: (1) The authority of the master to act as such; and (2) the valuation as made by the appraisers.

The facts, briefly stated, are the following: The decree directed that the mortgaged premises should be sold by "a master in chancery of this court.". No particular master was named. Under this decree the premises were appraised and sold by E. S. Dundy, Jr. It is shown, in support of the motion to set aside the appraisement and sale, that said E. S. Dundy, Jr., was on the 23d day of November, 1882, appointed clerk of the United States district court for the district of Nebraska, and has held such office from that date continuously to the present time; that, at the time of his appointment as such clerk, his father was judge of said court; that on the 25th day of January, 1886, a petition was presented to the judges of this court, signed by a number of attorneys, praying for the appointment of said E. S. Dundy, Jr., a master in chancery. On the same day an order was made by said judges appointing said Dundy master in chancery, which order was as follows:

"U. S. Circuit Court, District of Nebraska.

"On consideration of the annexed petition, it is ordered that E. S. Dundy, Jr., be appointed master in chancery of this court, and that he take and subscribe the oath of office, and file the same with the clerk of this court within thirty days.

"Leavenworth, Jany. 25, 1886.　　　　David J. Brewer, Circuit Judge.
　　　　　　　　　　　　　　　　　　"Elmer S. Dundy, District Judge."

Said E. S. Dundy, Jr., on the 4th day of February, 1886, took and subscribed to the proper oath of office, which oath, together with the petition and order of appointment, were on said day filed in the office of the clerk of this court; but the same were never recorded in any of the record books of said clerk's office.

From the foregoing state of facts it is urged that said Dundy was by law inhibited from acting as master in chancery, and that the sale in this case, by him as master in chancery, if not void, is at least avoidable. This contention is based on the following provisions of the United States statutes:

"That no person related to any justice or judge of any court of the United States by affinity or consanguinity, within the degree of first cousin, shall hereafter be ·appointed by such court or judge, to, or employed by such court or judge in any office or duty in any courts of which such justice or judge may be a member." 24 Stat. 552.

"No clerk of the district or circuit courts of the United States, or their deputies, shall be appointed a receiver or a master in any case except where the judge of said court shall determine that special reasons exist therefor, to be assigned in the order of appointment." 20 Stat. 415.

The section of the statute first above quoted, if applicable to sustain the claim of defendant in this case, must be held retroactive, and to have removed said Dundy not only from the office of master in chancery but that also of clerk, as it will be observed that his appointment to both positions was prior to the enactment of this provision of

the statute. To so hold is not only to overturn a well-settled rule of statutory construction, but also do violence to the language of the statute itself. In Murray v. Gibson, 15 How. 421, the court say:

"As a general rule for the interpretation of statutes, it may be laid down that they should never be allowed a retroactive operation where this is not required by express command, or by necessary and unavoidable implication. Without such command or implication they speak and operate on the future only."

In U. S. v. Heth, 3 Cranch, 398, the following was stated:

"Words in a statute ought not to have a retrospective operation unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied."

To the same effect are McEwen v. Den, 24 How. 242–244; Harvey v. Tyler, 2 Wall. 328, 347; Sohn v. Waterson, 17 Wall. 596; Chew Heong v. U. S., 112 U. S. 536, 5 Sup. Ct. 255; Fuller v. U. S., 48 Fed. 654.

In the case of People v. Green, 58 N. Y. 295, it was held that an amendment to the charter of a municipal corporation, which provided that an officer of the city who accepted a seat in the general assembly of the state should be deemed to have vacated his office, was to be construed as prospective, and not to apply to officers who had already become members of the legislature. The decision in this case was based, not on the ground that the legislature did not have the power to thus regulate and change the tenure of officers already elected, but for the reason that the intention to so regulate was not clearly expressed in the act.

The language of the statute in question by its terms is clearly prospective. It says:

"No person related to any justice or judge of any court of the United States * * * shall hereafter be appointed by such court or judge to * * * any office or duty in any court of which such justice or judge may be a member."

The statute does not prohibit one already appointed from continuing to act and perform the duties of his office.

It is further urged that the appointment as master was void because no special reasons therefor were assigned in the order of appointment. It will be noticed that authority to appoint the clerk as master exists when there are special reasons therefor. It is fairly inferable, from the order of appointment, that it was made because asked for by petitioners. Whether that was a sufficient special reason, within the purview of the statute, it is unnecessary at this time to inquire. In Fischer v. Hayes, 22 Fed. 92, Justice Blatchford, speaking with reference to the appointment of a deputy clerk as master, when it was shown that the solicitors of the parties had assented to the appointment in open court, although such was not shown in the order, said:

"Under such circumstances, consent being an adequate special reason in a case of the kind, it must be presumed that, as the judge appointed Mr. Shields, he determined that the consent was an adequate special reason. Nothing, therefore, remains but the irregularity of omitting to state the special reason in the decree. * * * The irregularity, if it was one, in a case of consent, of not specifying the consent in the decree as the special reason for the appointment, is a mere defect or want of form, which may be disregarded."

However irregular we might regard the appointment of Mr. Dundy as a master in chancery of this court, the judges were not without

jurisdiction, and such appointment clothed him with the insignia of the office, and, in exercising the powers and functions thereof, his acts were at least those of a de facto officer, and are valid so far as they concern the public and third persons, and cannot be questioned in a collateral proceeding. Cocke v. Halsey, 16 Pet. 71; Hussey v. Smith, 99 U. S. 20; Ralls Co. v. Douglass, 105 U. S. 728.

As a further reason why the sale should not be confirmed, it is urged that the appraisement is too low,—much below the actual value of the premises,—and affidavits are filed in support of this view. The right to have the premises appraised, and sold at a price not less than two-thirds of such appraised valuation, does not arise from any provision of the chancery practice, but is a right founded upon the provisions of the state statute providing therefor. Such being the case, the decisions of the highest state tribunal relative to the matter of vacating an appraisement should be followed, when not in conflict with any equity rule. It is the settled law in Nebraska that the appraisers, in making their valuation, act judicially, and their finding cannot be set aside except for fraud, which must be alleged and proven. True, actual fraud need not be proven. Constructive fraud may be shown, but fraud must be charged. Vought v. Foxworthy, 38 Neb. 790, 57 N. W. 538; Smith v. Foxworthy, 39 Neb. 214, 57 N. W. 994; Ecklund v. Willis, 44 Neb. 129, 62 N. W. 493. In Vought v. Foxworthy, the court say:

"Appraisers of property about to be sold under execution act judicially, and the value fixed by them on property appraised can only be assailed for fraud. Inadequacy of the appraised value, alone, is not sufficient cause for setting aside a sale, in the absence of fraud. To justify the vacation of a sale on the ground that the appraisement was too low, the actual value of the property must so greatly exceed its appraised value as to raise a presumption of fraud. All the affidavits filed in this case on the question of the value of the property were immaterial. There was no averment, in the motion to set the sale aside, of any fraudulent conduct on the part of the appraisers in making this appraisement, nor averment of any fraud or unfair means resorted to by the appraisers at the sale, or other party to the suit, conducing to the making of this appraisement. No facts were stated in the affidavits showing any fraudulent conduct on the part of any one in the making of the appraisement, nor can any such inference be drawn from the facts stated. The appraisement is assailed for error of judgment upon the part of the appraisers, and this furnishes no ground for setting the sale aside."

In this case no charge of fraudulent conduct is made against the appraisers. It is only shown that, in the judgment of those whose affidavits of value have been given, the value of the premises is greater than is shown by the appraisement to have been the judgment of the appraisers. Such showing is not sufficient. For the reasons given, the exceptions to the master's report are overruled, and the sale confirmed.