## In re FERGUSON.

### (District Court, S. D. New York. May 16, 1899.)

1. **BANKRUPTCY—ACTS OF BANKRUPTCY—SUFFERING LEGAL PROCESS.**

   Bankruptcy Act 1898, § 3, cl. a, providing that it shall be an act of bankruptcy if an insolvent debtor shall suffer a creditor to obtain a preference through legal proceedings, and not vacate or discharge the same at least five days before sale of the property affected, does not apply to liens acquired by legal proceedings more than four months before the filing of the petition in bankruptcy, and which therefore will not be dissolved by an adjudication.

2. **SAME.**

   Where executions on confessed judgments were issued and levied on goods in the defendant's store, for the apparent purpose of forestalling such action on the part of other creditors, and after the levy the sheriff was instructed by the attorney for the judgment creditors to "do nothing until further ordered," and the keeper who had been placed in charge was withdrawn, and about a year later other executions on the same judgments were issued and levied on the same property, *held*, that the earlier executions had become dormant, that the only valid lien was under the later executions, and that the defendant's failure to discharge the preference acquired by such lien, within five days before the sale, was an act of bankruptcy, on which, a petition being filed within the next four months, an adjudication against him might be made.

In Bankruptcy.

David B. Ackerman, for petitioning creditors.
Roger M. Sherman, for the bankrupt.

BROWN, District Judge. On the 12th day of April, 1899, a petition was filed by creditors of George D. Ferguson, seeking to have him adjudged a bankrupt on the ground that, being insolvent, he had not vacated a preference acquired by sheriff's levy on his stock of goods five days before April 13, 1899, on which day the sale, as advertised, was to take place. Bankruptcy Act, § 3, cl. a, subd. 3. The debtor appeared and answered, denying only the act of bankruptcy alleged.

The evidence shows that the defendant was in business at Mt. Vernon, Westchester county; that on the 13th of August, 1897, six judgments were entered against him on confession, in favor of six different creditors, amounting in the aggregate to $10,552.16; that on March 3, 1898, executions were issued to the sheriff of that county upon four of those judgments amounting to about $8,900, under which the sheriff made a levy on goods in the defendant's store and put in charge thereof an employé of the defendant. A few days afterwards the sheriff was directed by the attorney, who is the same in all the judgments and executions, "to let the property remain there and do nothing until further ordered." Soon after the issue of these executions, a judgment was recovered against the defendant in a suit by one Smith, on which an execution was issued, and a stay thereon obtained by the defendant shortly before April 1, 1898, with an undertaking on appeal, which judgment was afterwards paid; and the deputy who had all the executions testifies, that having understood that the stay referred to all of the executions, he "withdrew the keeper" on April 1, 1898; that nothing further was done under said executions; that on February 8, 1899, one of the petitioning creditors obtained a judgment against the debtor in New York county for $6,802.60, and that on the 10th of February, 1899, executions were again issued by the same attorney upon the four judgments first mentioned, and also upon the two other judgments first above mentioned; that on the receipt of the last six executions, the sheriff requested the attorney to withdraw the four executions first issued, which the attorney declined to do; that a levy was again made under the six executions on the same goods on the following day, under which a sale was afterwards advertised for April 13th, as above stated.

It was admitted that the goods levied upon under each levy were much less in value than the amount of the four executions first issued; so that if at the time of the issuing of the six executions in February, 1899, the levy under the four executions issued in March, 1898, were still valid, no benefit could accrue to the two executions first issued in February, 1899, nor could any "preference" be thereby acquired.

For the petitioning creditors it is contended, first, that the executions issued in March, 1898, had become dormant, by the intervention of the attorney, directing no further proceedings thereon until further ordered; and second, that even if they were not dormant, the failure of the debtor to discharge a preference acquired by those executions five days before the day of sale, was an act of bankruptcy within subdivision 3, cl. a, of section 3.

1. As to the last point, although the case would be literally within the language of subdivision 3, it does not, I think, lie within its intent. Subdivision 3 should be construed in connection with the provisions of section 67. That section provides that all "levies * * * at any time within four months prior to filing the petition shall be deemed null and void in case the debtor is adjudged a bankrupt." If the levy of March, 1898, was valid, and remained a continuous lien, assuming that the lien was lawfully acquired, the preference gained thereby being long before the bankruptcy act was passed,

and more than four months prior to the filing of the petition it could not now be disturbed. The act of bankruptcy referred to in subdivision 3, cl. a, of section 3, must I think be limited to such acts as by construction of law and in the view of the bankruptcy act, work an injury to other creditors by securing to them a preference which the bankruptcy law is designed to prevent. The language of this subdivision shows this intent. This cannot apply, therefore, to such levies and liens as are acquired long prior to the passage of the act and more than four months prior to the petition, which the bankrupt act does not vacate or disallow. Such a lien the debtor cannot be required to satisfy or vacate.

2. A careful consideration of the facts and circumstances proved leaves no doubt in my mind, however, that the levies and the four executions of March, 1898, had become dormant through the instructions of the attorney of the judgment creditors about April 1st, after the Smith judgment was secured, to do nothing till further orders. In the case of Hickok v. Coates, 2 Wend. 419, 422, Savage, C. J., says:

"Nor is it necessary that the delay should have been made with a view to defraud any one. Where the plaintiff in an execution directs an indefinite stay of proceedings, such direction is a supersedeas to the execution so far as third persons are concerned."

Many other cases hold the same doctrine in various forms, which is reaffirmed in Sage v. Woodin, 66 N. Y. 578, 584. The fact, moreover, that the executions of March, 1898, and February, 1899, were each time issued just previous to the time when executions in favor of other creditors were to be anticipated on judgments just recovered by them, and the delay of many months in the issue of the original executions after the confessions of judgment, and the subsequent instructions to do nothing further after Smith's execution was superseded and the appointment and withdrawal of the debtor's employé as keeper—all afford strong presumptive evidence that the issue of the executions in March, 1898, was designed only as a cover and a shield against other claims. I must find, therefore, that those executions had become dormant; and that the only valid sale and lien was under the six executions issued on February 10, 1899. As those executions were issued within less than four months of the filing of the petition and the bankrupt failed to discharge the preferential lien thereby acquired five days before the day of sale, under the construction given to the present act, I must adjudge the debtor a bankrupt. In re Reichman, 91 Fed. 624.

Ordered accordingly.