In re CHAPMAN.

(District Court, N. D. Georgia. February 8, 1900.)

1. BANKRUPTCY—ACTS OF BANKRUPTCY—SUFFERING LEGAL PROCESS.

Bankr. Act 1898, § 3a, cl. 3, providing that it shall be an act of bankruptcy if an insolvent debtor shall suffer a creditor to obtain a preference through legal proceedings, and not vacate or discharge the same at least five days before sale of the property affected, does not apply to the recovery of a judgment against the debtor for the foreclosure of the lien created by a deed in the nature of a mortgage, securing the payment of a promissory note, and a levy on the land conveyed, where the note and security were given before the enactment of the bankruptcy law, and for a valid debt.

2. SAME.

Although the creditor, in such proceeding, has recovered a general judgment against the debtor, as well as a judgment for the foreclosure of the lien, yet, if the levy made affects only the property bound by the lien, the debtor does not commit an act of bankruptcy in failing to release the property from such levy.

In Bankruptcy. On petition for adjudication in involuntary bankruptcy.

Brandon & Arkwright, W. A. & E. R. Black, and John B. Hutcheson, for petitioning creditors.

Goodwin & Hallman, and C. P. Goree, for respondent.

John M. Graham, for lien creditor.

NEWMAN, District Judge. On the 2d of January, 1900, A. F. Jencks and two others, as creditors of E. M. Chapman, of Atlanta, Fulton county, Ga., filed a petition against said Chapman to have him adjudged a bankrupt. After the necessary allegations as to the residence of the alleged bankrupt, the amount of his debts,

and that the amount due the petitioners exceeds the amount re-. quired by the bankrupt act, the petition states:

"Your petitioners further represent that said E. M. Chapman is insolvent, and that within four months next preceding the date of this petition the said E. M. Chapman committed an act of bankruptcy, in that he heretofore, to wit, on the 7th day of November, 1899, permitted. while insolvent, his creditor Elizabeth Sydney Herring to obtain a preference through legal proceedings, in that he allowed said creditor, after filing her suit to the November term, 1899, of the city court of Atlanta, upon an indebtedness represented by a promissory note for twenty five hundred dollars, to secure a judgment for said sum on the 7th day of November, 1899, and suffered and permitted said creditor to advertise said property for sale under said judgment, which sale is to occur January 2, 1900, and did not, five days before the sale or final disposition of the property, to wit, the following property [describing certain real estate in Atlanta], which property was affected by said preference, vacate and discharge such preference, and that by doing all of these things the said E. M. Chapman did commit an act of bankruptcy. The said E. M. Chapman suffered and permitted said judgment and sale in order that the said Elizabeth Sydney Herring might have thereby a preference over your petitioners and other creditors of said Chapman."

The act of bankruptcy alleged in this petition is under clause 3 of section 3a, which language is:

"Suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference."

Chapman's answer sets up that the judgment referred to in the petition was obtained on a promissory note executed more than five years ago, which note was secured by a loan deed made at the time the note was given; that the note was given for borrowed money; that, when it became due, Elizabeth Sydney Herring proceeded, under the statutes of Georgia, to foreclose said loan deed, and defendant had no defense to make thereto. He states that the title to the property was in Elizabeth Sydney Herring, and denies that the legal proceedings gave her any preference over Chapman's other creditors, but claims that the preference already existed.

While it is not fully stated in the answer, counsel have conceded in the argument that something over five years ago Chapman borrowed $2,500 from Elizabeth Sydney Herring, and, after making a promissory note for the amount borrowed, executed and delivered to her a deed to the land which is now levied on, under sections 2771–2775 of the Code of Georgia, for the purpose of securing the same. Although it is not so stated in the answer, Chapman probably received from Elizabeth Sydney Herring a bond conditioned to reconvey the property on the payment of the debt, as provided in the sections of the Code referred to. The suit which resulted in the judgment on the 7th of November, 1899, referred to in the petition, was on the note thus secured, and after judgment was obtained, conformably to the provisions of section 5432 of the Code of Georgia, a quitclaim deed was made by Elizabeth Sydney Herring to Chapman, and filed in the office of the clerk of the superior court of Fulton county, to the land in question, and thereupon the same was levied on and advertised for sale as stated in the petition.

It is conceded that when Elizabeth Sydney Herring obtained a judgment on November 7, 1899, against Chapman, she not only obtained a judgment enforcing the special lien given by the deed which was executed to secure the note, but also a general judgment against Chapman. It is upon this last fact (the obtaining of a general judgment against Chapman by the plaintiff in the judgment) that petitioners in the proceeding in bankruptcy rely for an adjudication under the clause of the bankrupt act referred to. Elizabeth Sydney Herring had acquired a lien by contract long before the passage of the bankrupt act, so that the lien she acquired was not a preference at all under the bankrupt act. Consequently a proceeding only to enforce this lien, and a judgment foreclosing or declaring the existence of the same, would not be a preferential proceeding under the bankrupt act. If the judgment only had this effect, there would be little difficulty about deciding this question. The difficulty arises from the fact that in the suit the plaintiff obtained a general judgment. The reply to this, however, is that, while the plaintiff has a general judgment, she is only proceeding to enforce it against the particular property on which she had the contract lien, and for that reason the proceeding to sell, whatever may have been the character of the judgment, is not a preferential proceeding. The plaintiff is only seeking for the time being to enforce the judgment against the property on which she had the contract lien, and the bankruptcy act could never have contemplated that a person should be adjudged a bankrupt for permitting the enforcement of a lien against particular property, when the lien as to that property was in no sense a preference under any of the provisions of the act. I see no practical difference between this execution proceeding, as it now is, against the property conveyed to the plaintiff to secure the debt, and an ordinary proceeding to enforce a mortgage against the particular property on which the mortgage was given. If a levy was made on property other than that as to which the plaintiff in the judgment had a special lien, and an attempt was being made to sell the same, and the defendant failed within five days of the time of sale to vacate or discharge the judgment, then, undoubtedly, it seems, an act of bankruptcy would be committed. To constitute an act of bankruptcy, under the clause in question, it would be necessary that the debtor should suffer or permit, while insolvent, a judgment to go against him, which judgment would of itself be a preference under the act; that he would then allow execution to be issued and levied, and proceedings to sell to be instituted by the necessary advertisement, and fail, within five days of the time of sale, to vacate or discharge the judgment. The sale which the defendant, by the act, must prevent, would consummate and make effective the preference given by the judgment. This is very different from the case at bar, in which an antecedent lien, not obnoxious in any way to the act, is being enforced by legal proceedings. In the first instance practical results beneficial to the creditors would be obtained by the institution of the bankruptcy proceedings, inasmuch as the preference created by the judgment lien would be annulled and vacated, and, as a consequence,

the property of the defendant equally divided. Such is evidently the intent of this act of bankruptcy,—that a preference might be avoided, and an equal distribution of the debtor's property result. In the case now before the court, the institution of the bankruptcy proceedings will not affect the lien of the judgment on the land which was about to be sold. Should the bankruptcy proceedings go on, the court must either allow the plaintiff to proceed to enforce her judgment as a special lien on this property, by execution of the city court, as she is now doing, or must allow the trustee to sell the property subject to the lien, should it be thought probable that anything could be realized for the general creditors over and above the amount of the judgment. The court would declare it to be an act of bankruptcy in Chapman not to have prevented the sale, and would then, by its own order, allow the sale to go on. This is not, in my opinion, such a case as congress had in view in enacting the clause in question.

The authority mainly relied on by counsel for the petitioning creditors is Manufacturing Co. v. Stoever (C. C. A.) 97 Fed. 330, and it appears from a casual reading to be a case favorable to them; but a more careful examination will show that the court never intended in that case to decide the question raised here. It is said in that opinion that:

"The propositions submitted by the appellant are two: That the period of four months within which the petition might be filed dates from the day of the attachment, and not from the seizure or sale on execution; and that the words 'suffered or permitted,' found in the statute which we have cited, must have a narrow, literal interpretation."

Both of these questions were decided adversely to the alleged bankrupt. The only thing in the opinion that could be considered applicable to the question raised here is the close of the opinion, in which the court says:

"In order to prevent any misapprehension, we will add that the question whether or not the attaching creditor acquired a valid lien, as against these proceedings in bankruptcy, is not in issue on this appeal."

This case is only inferential authority for the petitioning creditors here, even if there be no distinction between the lien of an attachment and a contract lien, such as we have in the present case. More like this case, and more pertinent, because the exact question was presented, is the case of In re Ferguson (D. C.) 95 Fed. 429. The part of the opinion material here is as follows:

"As to the last point, although the case would be literally within the language of subdivision 3, it does not, I think, lie within its intent. Subdivision 3 should be construed in connection with the provisions of section 67. That section provides that all 'levies * * * at any time within four months prior to filing the petition shall be deemed null and void in case the debtor is adjudged a bankrupt.' If the levy of March, 1898, was valid, and remained a continuous lien, assuming that the lien was lawfully acquired, the preference gained thereby being long before the bankruptcy act was passed, and more than four months prior to the filing of the petition, it could not now be disturbed. The act of bankruptcy referred to in subdivision 3, cl. a, of section 3, must, I think, be limited to such acts as, by construction of law, and in view of the bankruptcy act, work an injury to other creditors, by securing to them a preference which the bankruptcy law is designed to prevent. The language of this sub-

division shows this intent. This cannot apply, therefore, to such levies and liens as are acquired long prior to the passage of the act, and more than four months prior to the petition, which the bankrupt act does not vacate or disallow. Such a lien the debtor cannot be required to satisfy or vacate."

In this connection it may be remarked that an examination of the provisions of section 67 with reference to liens that are dissolved, and conveyances and incumbrances that are annulled, by proceedings in bankruptcy, and those which are unaffected, will strengthen the view which has been presented on the question here involved.

The whole question resolves itself into this: That the lien held by Elizabeth Sydney Herring is a valid lien, not repugnant to any of the provisions of the bankruptcy act, and a failure to stop a legal proceeding to enforce such a lien by sale of the incumbered property is not an act of bankruptcy, under clause 3 of section 3a of the act. No preference violative of any of the provisions of the act is being enforced, and the debtor is under no obligation to interfere with the sale. It is unnecessary to pass upon the question of insolvency. It really has not been discussed, and, in the view taken in this case, it becomes immaterial. The prayer for adjudication against Chapman will be denied, and the petition dismissed.