SEABOARD STEEL CASTING CO. et al. v. WILLIAM R. TRIGG CO.

FREDERICK POST CO. OF CHICAGO et al. v. SAME.

(District Court, E. D. Virginia. June 20, 1903.)

**1. BANKRUPTCY—ACTS OF BANKRUPTCY—SUFFICIENCY OF ALLEGATION.**

An allegation in a petition in involuntary bankruptcy against a corporation that within four months, while insolvent, it suffered or permitted attachments to be issued against it and levied, which attachments "have not to the present time been vacated," is insufficient to charge an act of bankruptcy.

**2. SAME—APPOINTMENT OF RECEIVER—CONSTRUCTION OF AMENDATORY ACT.**

The amendment of February 5, 1903, 32 Stat. 797, c. 487, § 2 [U. S. Comp. St. Supp. 1903, p. 410], to Bankr. Act July 1, 1898, c. 541, § 3, subd. 4, 30 Stat. 546, 547, making the appointment of a receiver because of insolvency an act of bankruptcy, is not retroactive, and such an appointment, made prior to the passage of the amendatory act, will not support a petition in involuntary bankruptcy filed after that date, although the receivership still continues.

In Bankruptcy. On demurrers to petitions in involuntary bankruptcy and motions to dismiss the same.

Munford, Hunton, Williams & Anderson and Bickford & Stuart, for petitioners Seaboard Steel Casting Co. et al.

Jo. Lane and Cary Ellis Stern, for petitioners Frederick Post Co. of Chicago et al.

Christian & Christian and J. Jordan Leake, for William R. Trigg Co. and sundry creditors.

WADDILL, District Judge. The petitions in the above-entitled causes were filed in the clerk's office of this court on the 21st day of April, 1903, within a few minutes of each other, and in the order named, each praying that the William R. Trigg Company be adjudged an involuntary bankrupt, and for convenience will be considered together.

The act of bankruptcy set forth in the first-named petition is that within four months next preceding the filing of said petition, to wit,

on the 23d day of December, 1902, the said William R. Trigg Company, while insolvent, committed an act of bankruptcy, in that on the said day, because of insolvency, a receiver was put in charge of the plant and property of the said William R. Trigg Company by an order of the chancery court of the city of Richmond, Va. In the last-named cause the same act of bankruptcy is charged, and, in addition, that, subsequently to the appointment of the said receiver, an attachment sued out in the city of New York, by certain creditors of said William R. Trigg Company, and levied on the Standard Oil Company, had not been vacated. The William R. Trigg Company filed its answers to the said petitions, respectively, as did also sundry creditors of the bankrupt, in which the insolvency of the company is admitted; but the defense set up is that the company is not a corporation such as is liable to be adjudged a bankrupt, that the appointment of a receiver mentioned in the petitions is not, in point of fact, an act of bankruptcy, and that the averments in the said last-named petition in reference to the attachments do not constitute an act of bankruptcy. And the said William R. Trigg Company, and the creditors, respectively, joining with them, in opposition to the bankruptcy proceedings, demurred to the sufficiency of said two petitions, and moved the court to dismiss the same, as well because of the insufficiency of the two alleged acts of bankruptcy as because of sundry defects arising upon the face of the petitions relative to the affidavits to the same and the descriptions and characters of the claims set out therein. The proceedings are now before the court upon the demurrers and motions to dismiss, which demurrers and motions have been elaborately argued by counsel, orally and in writing.

In the view taken by the court on the merits, it will not be necessary to determine the questions raised affecting either of said two petitions, and affidavits thereto, in matters of form only, further than, in passing, to say that the objections at the present stage of the proceedings are either without merit or pertain to matters properly the subject of amendment.

The act of bankruptcy in the last-named petition, regarding the company's allowing an attachment to issue against it, will first be considered. The precise averment of the petition in that respect, after setting forth the act of bankruptcy, relative to the receiver, is this: "And that subsequently attachments sued out in the city of New York by certain creditors against the said William R. Trigg Company, and levied on the Standard Oil Company, have not to the present time been vacated." Manifestly this averment is insufficient to constitute an act of bankruptcy.

The third paragraph of section 3 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 546, 547 [U. S. Comp. St. 1901, p. 3422]) enumerates the acts of bankruptcy as follows: "Suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property, affected by such preference, vacated or discharged such preference." The mere suing out of an attachment and levying the same does not suffice to constitute an act of bankruptcy. A judgment must be rendered thereon which would result in

creating a preference among creditors, and a failure for at least five days to vacate and discharge the preference in terms refers to the five days before a sale or final disposition of any property affected. It is not averred that this attachment will result in creating a preference, nor does it appear what connection the Standard Oil Company has with the William R. Trigg Company; but assuming that it was indebted to the William R. Trigg Company, and the attachment was in the nature of a garnishment, to stop money in the hands of the Standard Oil Company, it would nevertheless be necessary to aver that the Standard Oil Company was indebted to the Trigg Company; that an attachment had been served and judgment rendered thereon, which would result in creating a preference; and that the said Trigg Company had not within five days of the final disposition of the money or property to be affected by the garnishment caused the lien thereby created upon the property to be vacated. In re Rome Planing Mills (D. C.) 96 Fed. 812; Parmenter Mfg. Co. v. Stoever et al., 97 Fed. 330, 38 C. C. A. 200; In re Chapman (D. C.) 99 Fed. 395; In re Thomas (D. C.) 103 Fed. 272.

This brings us to the consideration of the receivership in the chancery court of the city of Richmond, set forth in each petition as an act of bankruptcy, and which is, as a matter of fact, the act most seriously relied on for the adjudication in each petition. The appointment of a receiver for a corporation, such as set forth in each petition, is conceded to be an act of bankruptcy, under the present law; but the controversy in this case arises by reason of the fact of the existence of the receivership prior to the passage of the act of February 5, 1903, amendatory of the bankrupt act of July 1, 1898, and presents the succinct question whether, under the amendatory act, the appointment of a receiver, declared by it to be an act of bankruptcy, applies only to cases arising after the passage of the act, or to cases existing prior to its passage, and within four months therefrom.

That the appointment of a receiver in cases like the one under consideration was not an act of bankruptcy prior to the amendatory act may be conceded, in the light of the current weight of authority on that subject, and the fact that Congress saw fit in the amendatory act to particularly specify such act as an act of bankruptcy. In re Baker-Ricketson Co. (D. C.) 97 Fed. 489; In re Empire Metallic Bedstead Co., 98 Fed. 981, 39 C. C. A. 372; In re Blair (D. C.) 99 Fed. 76; In re Harper & Bros. (D. C.) 100 Fed. 266; Vaccaro v. Bank, 103 Fed. 436, 43 C. C. A. 279; Davis v. Stevens (D. C.) 104 Fed. 235; In re Varick Bank of New York (D. C.) 119 Fed. 991.

Do the receivership proceedings specified in the petitions constitute acts of bankruptcy under the amended act? This depends upon whether the act as amended shall be construed as retroactive in that regard or not. The rule of construction by which it is determined whether a statute is retroactive or not is a wise one, and operates to avoid, as far as possible, consequences that would almost inevitably follow from having laws take effect prior to the time of their enactment. Such statutes are rarely passed, because of the injury likely to result from them, and courts do not incline to the interpretation of a

statute that will cause it to become effective prior to the time of its passage.

This doctrine is definitely accepted by the courts of the United States and of this state. Indeed, the presumption is that statutes are intended to operate prospectively, rather than retroactively; and they should be so interpreted, unless the act itself plainly negatives such a conclusion. Shreveport v. Cole, 129 U. S. 36, 43, 9 Sup. Ct. 210, 32 L. Ed. 589; City Railway Co. v. Citizens' Railway Co., 166 U. S. 557, 565, 17 Sup. Ct. 653, 41 L. Ed. 1114. The Supreme Court of the United States aptly states this doctrine in U. S. v. Heth, 3 Cranch, 398, 413, 2 L. Ed. 479, as follows: "Words in a statute ought not to have a retroactive operation, unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied." This was followed by the same court in Chew Heong v. U. S., 112 U. S. 536, 559, 5 Sup. Ct. 255, 28 L. Ed. 770, and may now be treated as the settled law on the subject, certainly so far as the federal courts are concerned.

The Supreme Court of Appeals of Virginia, in Crigler v. Alexander, 33 Grat. 677, thus stated the doctrine, citing from Potter's Dwarris' Notes, p. 162: "The general principle deduced from these authorities is that no statute is to have a retrospect beyond the time of its commencement, and this principle is one of such obvious convenience and justice that it must always be adhered to, unless in cases where there is something on the face of the statute putting it beyond doubt that the Legislature meant it to operate retroactively. And, although the words of the statute may be broad enough in their liberal extent to comprise existing cases, they must still be construed as applying only to cases that may thereafter arise, unless a contradictory intention is unequivocally expressed therein;" thus showing that this doctrine is as well recognized in the highest courts of this state as in those of the United States.

Counsel for petitioning creditors insist with great earnestness and much force and ingenuity that the act in question is so clear, and that it was so manifestly the purpose of Congress to have the amended act, as to this new ground of bankruptcy, operate retroactively, that the court should give effect to the act according to its plainly expressed terms, and not by judicial construction give to the same a meaning not intended by its authors. It is true that Congress amended subsection 4 of paragraph 3 of the original bankruptcy act (Act Feb. 5, 1903, c. 487, 32 Stat. 797) by making an additional act of bankruptcy, as follows: "Applied for a receiver or trustee for his property, or because of insolvency a receiver or trustee has been put in charge of his property, under the laws of the state, or the territory, or the United States;" and by the original act it is provided (paragraph B of section 3, Act July 1, 1898, c. 541, 30 Stat. 546, 547 [U. S. Comp. St. 1901, p. 3422], that "a petition may be filed against a person who is insolvent, who has committed an act of bankruptcy within four months after the commission of such act."

A literal interpretation of these two provisions gives much color to the contention of counsel for petitioning creditors; and they further re-

ly upon the fact, under the original act (paragraph 2, § 71, Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3452]), Congress in express terms forbade the filing of involuntary petitions for a period of four months after the passage of that act, and also in terms declared, that it should not affect proceedings theretofore commenced under state insolvency laws; from which they conclude that as no such limitations were made in the amended act creating this particular ground of bankruptcy, although Congress had its attention called to the character of cases the amendment was intended to apply to, and when the same should become effective, section 19 of the amended act (Act Feb. 5, 1903, c. 487, 32 Stat. 801), in which it provided that the amended act should not apply to cases pending when the act took effect, clearly indicated a purpose on their part to make this act retroactive, as to this cause of bankruptcy; relying upon the familiar maxim applicable to the construction of statutes, "Expressio unius est exclusio alterius"—that is to say, that the enumeration on the part of Congress of one class of cases to which the act should not apply indicates the exclusion of the other, and that Congress meant as to the latter class that no limitation should be applicable, and the act became immediately operative.

At first blush this position would appear to be correct; but upon a careful consideration of the original and amended acts, and having in view just what Congress did do in reference to the limitations referred to, contained as well in the original as in the amended act, it becomes quite apparent that a retroactive effect was not intended to be given to this new act of bankruptcy. Clearly, it was not the intention of Congress that the original act should have a retroactive effect, nor that it should apply to insolvency cases then pending under state laws. It in express terms provides against this interpretation, for, although the act became operative from its passage, it forbade the institution of involuntary proceedings for four months; and it should not now be held, when a new ground of bankruptcy is created, that as to that act an interpretation different from what was provided for in the original act should be had, unless the same is positively prescribed, and mere silence on the subject, in the light of the provisions of the original act, will not operate to make the same apply to cases pending at the time of the passage of the act.

The qualifying clause in the amended act (section 19, supra), whereby it was made applicable only to pending cases, does not support the theory contended for, but, on the contrary, negatives it, as it will not be supposed that Congress meant to clearly guard against the new act applying, even to cases then pending in the bankruptcy courts, and as to which the amendments in the main pertained to matters of form and practice, and intended, without expressing it plainly, to have it apply retroactively in matters of substance, to the extent of condemning the transactions of persons innocently entered into, and which might then be the subject of the consideration of other courts, state and federal.

Counsel further insist that it is not necessary for the court to treat the amended act as retroactive in order to decree the receivership proceedings mentioned in the petitions an act of bankruptcy, for the

reason that under the language of the act, "because of insolvency a receiver or trustee had been put in charge of his property," contemplates a continuous act, and the fact that the receivership was allowed to continue after the passage of the amended act was of itself sufficient to create the act of bankruptcy. This position is clearly untenable; for, if true, every receivership, regardless of when the receiver was appointed, would constitute an act of bankruptcy, provided the same was continued after the amended act aforesaid. Such an interpretation would clearly not be in accordance with the intention of Congress.

From what is said above, in reference to the sufficiency of the acts of bankruptcy alleged in each petition, it will be unnecessary to determine the questions raised by the defendant's answer, as to whether or not the William R. Trigg Company is such a corporation as can be adjudged an involuntary bankrupt; this ground of bankruptcy involving, as it does, a question of fact as well as of law.

The motion to dismiss the petitions in bankruptcy should be sustained, and a decree will be accordingly so entered.