# UNITED STATES *v.* BURR.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 1021. Submitted May 20, 1895. — Decided June 3, 1895.

Goods arriving at the port of New York August 7, 1894, entered at the custom house and duties paid August 8, 1894, and the entry liquidated as entered at the custom house August 28, 1894, on which day the tariff act of August, 1894, became a law without the signature of the President, were subject to duty under the act of October 1, 1890, and not to duty under the act of August 28, 1894.

The provision in § 1 of the tariff act of 1894, which took effect August 28 of that year, that from and after the first day of August, 1894, there shall be levied, collected, and paid upon articles imported from foreign countries the rates of duty prescribed by that act, does not apply to transactions completed when the act became a law.

The third question from the Circuit Court of appeals is too general and need not be answered.

BURR and Hardwick, importers, made an importation of cotton laces, per the La Navarre, from Havre. The vessel arrived on August 7, 1894, and the goods were entered by them for consumption at the port of New York on August 8, 1894. Duty thereon was levied and assessed by the collector of customs at sixty per cent *ad valorem* under the provisions of Schedule J, paragraph 373, of the tariff act of October 1, 1890, which was then in force. The duty was paid by the importers on August 8, and the goods were delivered to them on August 11, 1894. On August 28, 1894, the entry of the merchandise was liquidated at the custom house as entered, that is to say, without any change of the duties from those assessed at the time of entry.

On that day the tariff act of that year became a law, and on September 7, 1894, the importers filed their protest, claiming that said cotton laces were dutiable at fifty per cent *ad valorem* under paragraph 276 of Schedule J of the act of August, 1894, and were not dutiable under the act of October 1, 1890.

The board of general appraisers affirmed the decision of the collector, General Appraiser Somerville delivering the opinion.

The importers appealed to the Circuit Court, and the return of the board was therein duly filed with the record and evidence taken by them, together with a certified statement of the facts involved in the case and their decision thereon. Evidence was taken in the Circuit Court before one of the general appraisers as an officer of the court, as to the legislative history of the act of August 28, 1894, from which it appeared:

"(*a*) That the bill was introduced in the House of Representatives on December 19, 1893, House bill, H. R., 4864.

"(*b*) That it passed the House of Representatives on February 1, 1894.

"(*c*) That as it then passed the House of Representatives the date in sections 1 and 2 was as follows: 'On and after the first day of June, 1894, unless otherwise specially provided for in this act,' etc.

"(*d*) That the bill was laid before the Senate February 2, 1894, and referred to the Finance Committee.

"(*e*) That the bill was reported by the Finance Committee on March 20, 1894.

"(*f*) That sections 1 and 2 of said bill, when so reported, contained the date of the 30th day of June, 1894, instead of the 1st day of June, 1894.

"(*g*) That said bill as amended by the Senate passed the Senate on July 3; 1894.

"(*h*) That when it passed the Senate the date contained in the first and second sections thereof was August 1, 1894, instead of the 30th day of June, 1894.

"(*i*) That the bill as amended in the Senate finally passed the House on August 13, 1894, without change, after a long discussion and deliberation by the committees of conference.

"(*j*) That on August 15, 1894, having received the signatures of the presiding officers of both Houses, the bill was sent to the President of the United States.

"(*k*) That on August 28, 1894, the bill was sent by the President to the Secretary of State, and the following endorsement was made thereon:

"'Note by the Department of State. — The foregoing act having been presented to the President of the United States

for his approval, and not having been returned by him to the House of Congress in which it originated within the time prescribed by the Constitution of the United States, has become a law without his approval.

"'H. R. No. 4864. — An act to reduce taxation, to provide revenue for the government, and for other purposes.

"'August 28, 1894.'"

It was stipulated in the Circuit Court that the persons composing the firm of Burr & Hardwick, the importers, were James M. Burr and Charles C. Hardwick; that the merchandise in controversy consisted of "cotton laces;" that the merchandise, if dutiable under the act of October 1, 1890, was dutiable at sixty per cent *ad valorem* under the provision for cotton laces contained in paragraph 373 of Schedule J of that act; and that if the merchandise was dutiable under the act of August 28, 1894, it was dutiable at fifty per cent *ad valorem* under the provision for cotton laces in paragraph 276 of Schedule J of the latter act. The cause thereafter came on to be tried in the Circuit Court, and the judge holding that court, after hearing the argument, gave an opinion January 15, 1895, 66 Fed. Rep. 742, reversing the decision of the board of general appraisers, and entered judgment January 16, 1895, holding that there was error in the decision of the board of general appraisers, and that the merchandise was properly dutiable as cotton laces at fifty per cent *ad valorem* under paragraph 276 of Schedule J of the act of August 28, 1894, and that the entry be reliquidated accordingly. From this judgment or decree an appeal was taken to the Circuit Court of Appeals for the Second Circuit, and thereupon that court, desiring the instruction of this court, made its certificate, embodying the foregoing facts, and submitting the following questions:

"(1) Should the assessment for duty of the merchandise described in the foregoing statement of facts, under paragraph 373 of the act of October 1, 1890, be sustained, notwithstanding the provisions of the tariff act of August 28, 1894?

"(2) Should the said merchandise described in the foregoing statement of facts be assessed for duty under para-

graph 276, Schedule J, of the tariff act of August 28, 1894?

"(3) Should the rates of duty prescribed by the first section of the tariff act of August, 1894, (unless otherwise specially provided for in said act,) be levied, collected, and paid upon all articles imported from foreign countries or withdrawn for consumption on and after August 1, 1894, and prior to August 28, 1894?"

*Mr. Wallace MacFarlane* for appellants.

*Mr. Charles Curie, Mr. David Ives Mackie* and *Mr. W. Wickham Smith* for appellees.

Mr. CHIEF JUSTICE FULLER delivered the opinion of the court.

The act of October 1, 1890, c. 1244, 26 Stat. 567, was in force until August 28, 1894, when it was repealed by section 72 of the latter act, 28 Stat. 509, c. 349, which reads as follows:

"All acts and parts of acts inconsistent with the provisions of this act are hereby repealed, but the repeal of existing laws or modifications thereof embraced in this act shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause before the said repeal or modifications; but all rights and liabilities under said law shall continue and may be enforced in the same manner as if said repeal or modifications had not been made. Any offences committed and all penalties or forfeitures or liabilities incurred prior to the passage of this act under any statute embraced in or changed, modified, or repealed by this act may be prosecuted or punished in the same manner and with the same effect as if this act had not been passed. All acts of limitation, whether applicable to civil causes and proceedings or to the prosecution of offences or for the recovery of penalties or forfeitures embraced in or modified, changed, or repealed by this act shall not be affected thereby; and all suits, proceedings, or prosecutions, whether civil or criminal, for causes arising or acts done or committed prior to the passage of

this act, may be commenced and prosecuted within the same time and with the same effect as if this act had not been passed: *And provided further*, That nothing in this act shall be construed to repeal the provisions of section three thousand and fifty-eight of the Revised Statutes as amended by the act approved February twenty-third, eighteen hundred and eighty-seven, in respect to the abandonment of merchandise to underwriters or the salvors of property, and the ascertainment of duties thereon."

By section 54 of the act of October 1, 1890, it was provided: "That any merchandise deposited in bond in any public or private bonded warehouse may be withdrawn for consumption within three years from the date of the original importation, on payment of the duties and charges to which it may be subject by law at the time of such withdrawal."

This merchandise was entered for consumption, and delivered after August 1 and before August 28, 1894, when the act in question became a law. It was subject then to the rates of duty imposed by the law in force at that time, namely, the act of October 1, 1890, and the duties were properly assessed by the collector under that law, unless some provision to the contrary is to be found in the act of August 28, 1894.

The first section of the act of 1894 reads: "That on and after the first day of August, eighteen hundred and ninety-four, unless otherwise specially provided for in this act, there shall be levied, collected, and paid upon articles imported from foreign countries or withdrawn for consumption, and mentioned in the schedules herein contained, the rates of duty which are, by the schedules and paragraphs, respectively prescribed, namely:"

The contention is that the language of that section being free from all obscurity and ambiguity, there is no room for construction, and that the court is imperatively required to conclude that it was the intention of Congress that the act should have a retrospective operation as of August 1, 1894, although it did not become a law until after that date. It is conceded that the general rule is, as stated in *United States* v. *Heth*, 3 Cranch, 398, 413, that "words in a statute ought not to have a retrospective application unless they are so clear,

strong, and imperative, that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied;" and that the usual course in tariff legislation has been, inasmuch as some time is necessary to enable importers and business men to act understandingly, to fix a future date at which the statutes are to become operative. The question is not one of construction but of intention as to the operative effect of this act because of the existence of the particular date in section 1.

In view of the general rule and the admitted policy in respect of such laws, is there anything on the face of the act which raises such a doubt in the matter as justifies the court in considering whether the language used in that particular section must be literally applied in the case before it?

And upon the threshold we are met with the fact that the act of October 1, 1890, was not repealed in terms until August 28, 1894; and that the repealing section of the latter act kept in force every right and liability of the government or of any person, which had been incurred or accrued prior to the passage thereof, and thereby every such right or liability was excepted out of the effect sought to be given to the first section.

The right of the government to duties under the tariff law which existed between August 1 and August 28 was a right accruing prior to the passage of the act of 1894 (that is, the date when the bill became a law); and the obligation of the importers between August 1 and August 28 to pay the duties on their entries under the existing tariff law was a liability under that law arising prior to the passage of the act of 1894; and if Congress intended that section 1 should relate back to August 1, still the intention is quite as apparent that the act of October, 1890, should remain in full force and effect until the passage of the new act on August 28, and that all acts done, rights accrued, and liabilities incurred under the earlier act, prior to the repeal, should be saved from the effect thereof, as to all parties interested, the United States included.

The duties under consideration were paid August 8, and the merchandise delivered on August 11, but it was not until

August 28 that the fact was stamped on the entry that the goods were liquidated as entered. There was no change in the classification, and no additional duty was demanded or collected, and the payment made at the time of entering the merchandise for consumption was the payment of duties. *Barney* v. *Rickard*, 157 U. S. 352. The original assessment of duty was right, and the final liquidation was the same, and there was no specific provision in the act of 1894 requiring a liquidation at the rates under that act. How then can it be held that the act of October 1, 1890, was intended to be repealed by retroaction?

Moreover, in arriving at the true intention of Congress, we cannot treat section 1 as if it constituted the entire act, but must deduce the intention from a view of the whole statute and from the material parts of it.

By section 2 it was provided that certain enumerated articles should be exempt from duty "on and after the first day of August, eighteen hundred and ninety-four, unless otherwise provided for in this act," and as to those which were dutiable under the act of October 1, 1890, the question arises whether Congress intended such duties should be collected, and refunded after the act of August 28, 1894, went into effect?

By section 23 a license was provided for, and that "from and after the first day of August, eighteen hundred and ninety-four, no person shall transact business as a custom-house broker without a license granted in accordance with this provision." Since there was no law prior to this, which authorized the collector to require a license from a custom-house broker, it was manifestly anticipated, in using the words, the first day of August, that the bill would become a law before that day.

By section 38, it was provided that on and after the first day of August, 1894, there "shall be levied, collected, and paid by adhesive stamps, a tax of two cents for and upon every pack of playing cards;" and sections 43 and 45 impose a penalty of fifty dollars for every violation of the law incurred by making or selling such cards without affixing the stamps prescribed. Every dealer, if the act were treated as operating retrospec-

tively, would not only be liable for a tax of two cents a pack on every pack of playing cards manufactured or sold or removed from the place of manufacture, and upon every pack of playing cards in stock on and after August 1, but to an *ex post facto* penalty of fifty dollars for every pack of playing cards that he had sold or removed between August 1 and August 28. Of course these sections cannot be given a retroactive effect according to the terms employed. Again, a higher rate of duty was imposed on many articles by the act of 1894 than under the prior act, and a lower rate of duty on others, while some that were free were made dutiable, as, for instance, the article of sugar. Must duties paid between August 1 and August 28 be refunded where the rate was lowered, and assessed where the rate was raised, or a duty imposed where none existed? Clearly not.

These considerations lead to the conclusion that the act ought not to be construed to operate retrospectively contrary to the general rule, and so as to turn what was intended to secure a period of time to enable business men to act understandingly under the new law into a source of confusion and mischief to the contrary.

In these circumstances we are entitled to avail ourselves of such light as the history of the steps taken in the enactment of the law, as disclosed by the legislative records, may afford. By section 895 of the Revised Statutes it is provided that "extracts from the Journals of the Senate, or of the House of Representatives, and of the Executive Journal of the Senate when the injunction of secrecy is removed, certified by the Secretary of the Senate or by the Clerk of the House of Representatives, shall be admitted as evidence in the courts of the United States, and shall have the same force and effect as the originals would have if produced and authenticated in court."

The certificate shows that the bill passed the House of Representatives February 1, 1894, and that its first section provided that the rates of duty prescribed should be levied "on and after the first day of June," while the second section provided that on and after that day certain articles named, when imported, should be exempt from duty.

The bill was reported to the Senate by the finance committee, (to which it had been ⸱referred,) on March 20, 1894, and "the thirtieth day of June" was substituted in sections one and two for the first day of June. The bill, as amended in the Senate, passed that body July 3, 1894, and sections one and two were amended by substituting the first day of August for the thirtieth day of June. The conference committee of the House agreed to the bill as passed by the Senate without any further amendment, on August 13, and it was sent to the President on August 15. It thus appears that at every stage of its progress the intention of Congress was that the tariff provisions of the bill should operate prospectively, and that as by the concurrence of the House in the Senate amendments the bill did not go back to the Senate, the first day of August remained in the bill as originally fixed in the Senate, July 3, 1894.

Both houses intended that the duties imposed by section one, and the additions made to the free list in section two, should not take effect except at a point of time after the passage of the act. And the Senate endeavored to effectuate that intention by its action on the third of July, but, because of the differences between the two bodies, the passage of the act was delayed, which delay was terminated by the House finally accepting the changes made by the Senate, so that no new date in the future was specifically assigned for section one to go into effect, although the intention that the act should not operate retrospectively was palpable throughout.

And as the act of October 1, 1890 was not repealed by the act of August, 1894 until the latter act became a law, when inconsistent laws were declared thereby repealed, we think it cannot be doubted that Congress intended the rates of duty prescribed by the act of 1894 to be levied on the first day of August, if the bill should then be a law, and if not, then as soon after that date as it should become a law. On the first day of August the duties prescribed by the first section of the act of 1894 could not be lawfully levied, and so far as the importations in this case are concerned and others similarly situated, the law required the exaction of the duties prescribed

by the act of 1890. As to such importations the first section of the act of 1894 could not be literally carried out, unless by holding it to operate as a retroactive repeal, notwithstanding the saving clause, and this we consider altogether inadmissible. The language of section one was that on and after the first of August there *shall* be levied, and of the second section, that on and after the first day of August certain enumerated articles when imported *shall* be exempt from duty. In our judgment, the word " shall " spoke for the future and was not intended to apply to transactions completed when the act became a law.

We regard the third question as too general and unnecessary to be answered, but

> *Answer the first question in the affirmative, and the second in the negative, and it will be so certified.*