**REED v. HOWBERT, Collector of Internal Revenue.**

(District Court, D. Colorado. October 3, 1925.)

No. 7699.

**1. Internal revenue ⟨⟩8—Retroactive operation of statute taxing transfers by trust not limited.**

Retroactive operation of Act Feb. 24, 1919, § 402(c), being Comp. St. Ann. Supp. 1919, § 6336¾c, taxing transfers by decedent of any interest with respect to which he has at any time created a trust, whether before or after passage of act, *held* not limited to date of Act Sept. 8, 1916, which had been construed by the Supreme Court as not intended to be retroactive.

**2. Internal revenue ⟨⟩2—Tax on property of trust estate, created before enactment of estate tax law, not unconstitutional.**

Estate tax levied under Act Feb. 24, 1919, § 402 (Comp. St. Ann. Supp. 1919, § 6336¾c), on property of trust created by deceased long before enactment of such law, *held* not direct tax, violative of Constitution.

**3. Internal revenue ⟨⟩2—Everyday operation and incidents of taxation are tests to be applied when passing on constitutionality.**

Everyday operation and incidents of taxation are tests to be applied when passing on constitutionality, rather than scientific or economic arguments.

**4. Internal revenue ⬡⇒8—Substance and not form is controlling in determining whether or not a transfer of property on creation of trust was complete.**

Substance and not form is controlling in determining whether or not a transfer of property on creation of trust was complete.

**5. Internal revenue ⬡⇒8—Creation of trust not a complete transfer, where donor retained income from trust property until his death, and beneficiaries' rights depended thereon.**

Trust by which decedent, while living, had divested himself of ownership of trust estate, *held* not a completed transaction, in which he retained no interest, where the entire income was payable to him during his life, and value of such trust estate was properly included, under Act Feb. 24, 1919, in computing value of his estate subject to transfer tax.

**6. Constitutional law ⬡⇒48—Every presumption is in favor of validity of a statute, until contrary shown beyond rational doubt.**

Every presumption is in favor of validity of a statute, until contrary shown beyond rational doubt.

**7. Internal revenue ⬡⇒2—Retroactive federal estate tax law held not unconstitutional.**

Act Feb. 24, 1919, § 402 (Comp. St. Ann. Supp. 1919, § 6336¾c), taxing transfers by trust in contemplation of, or intended to take effect after, death, *held* not unconstitutional, because retroactive, and applicable to trusts created before passage of act, even if such trusts be regarded as completed transfers.

At Law. Action by Mary Dean Reed, as executrix of the last will and testament of Verner Zevola Reed, deceased, against F. W. Howbert, United States Collector of Internal Revenue for the District of Colorado. Decree entered overruling plaintiff's demurrer to defendant's answer.

Dines, Dines & Holme, Harold D. Roberts, and Charles E. Works, all of Denver, Colo., for plaintiff.

George Stephan, U. S. Atty., and Roy H. Blackman, Asst. U. S. Atty., both of Denver, Colo., for defendant.

SYMES, District Judge. The plaintiff, Mary Dean Reed, as executrix of the last will and testament of Verner Z. Reed, deceased, sues the defendant, as collector of internal revenue for Colorado, to recover an additional federal estate tax assessed against the estate of the decedent, under what is known as the estate tax law of 1918 (Act Feb. 24, 1919, 40 Stat. 1057). The case is here on the general demurrer of the plaintiff to the answer, which for this discussion establishes the following facts: That the said Verner Z. Reed conveyed to a trust company in 1902 certain personal property in trust, the in-

come to be paid to him during his life, and thereafter the income, and ultimately the principal, to certain named beneficiaries. Between the date of the creation of the trust and July 10, 1916 (the date of the first estate tax law), additional personal property was added to the trust. The trustee, pursuant to powers granted by the trust instrument, made changes in the securities, so that at the time of Mr. Reed's death some of the investments had never been owned by him.

Verner Z. Reed died April 20, 1919, leaving a large separate estate. The executors made a tax return to the collector, omitting this trust property. The Commissioner thereupon assessed an additional tax, on the ground that the securities held in this trust at the date of his death, and, valued as of that date, should be included in his gross estate. The additional tax was paid under protest, and plaintiff sues to recover the amount, $978,004.24.

The tax imposed by the act is a tax upon the transfer of the net estate of the decedent. In the instant case we are concerned with part of section 402 (Comp. St. Ann. Supp. 1919, § 6336¾c), to wit:

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated: * * * (c) To the extent of any interest therein of which the decedent has at any time *made a transfer*, or with respect to which he has at any time *created a trust*, in contemplation of or intended to take effect in possession or enjoyment at or after his death (*whether such transfer or trust is made or created before or after* the passage of this act)."

The constitutional point raised in this case is that Congress cannot tax transfers intended to take effect in possession or enjoyment at or after death, when the transfers were completed prior to the passage of the taxing act.

[1] I. Preliminary to plaintiff's main argument, it is stated that the constitutional questions involved may be eliminated by the adoption of a reasonable construction of the statute, and accordingly it is suggested that the act be given only a limited retroactive effect; that is, to the date when the 1916 act (39 Stat. 756) became effective, to wit, September 9, 1916. The suggestion, if adopted, would avoid the necessity of passing upon the constitutionality of the act, and take this trust out from under its provisions. The section of the 1918 act quoted is a re-

enactment of the 1916 act, with the addition of the words, "whether such transfer or trust is made or created before or after the passage of this act." In Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454, the Supreme Court held that Congress did not intend this provision of the 1916 act to be retroactive—that is, applicable to transactions consummated before its passage—but that the re-enactment of this section in the 1918 act, with the addition of the language above quoted, was not a construction of the earlier act as retroactive, but the expression of a new purpose; that when Congress passed the latter act it had retroactivity in mind, and so declared it. The court, therefore, must consider the constitutionality of this retroactive feature.

[2, 3] II. It is urged that the tax was imposed upon Mr. Reed's estate merely because he exercised one of the attributes of the ownership of property before there was such a law, and therefore it is a direct tax, and, being unapportioned, is unconstitutional. The arguments marshaled in support of this thesis are very exhaustive, and unusually interesting, but based on scientific and economic theories of taxation, rather than legal. The Supreme Court has stated in many cases that the practical, everyday operation and incidents of taxes are the tests to be applied when passing upon their constitutionality, and that scientific and economic arguments, such as are advanced here, should not be considered. Pollock v. Farmers' Loan & Trust Co., on rehearing 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108; Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969; Greiner v. Lewellyn, 258 U. S. 384, 42 S. Ct. 324, 66 L. Ed. 676. In Knowlton v. Moore, supra, the court said at pages 82 and 83 (20 S. Ct. 764):

"These conclusions, however, lend no support to the contention that it was decided that duties, imposts, and excises which are not the essential equivalent of a tax on property generally, real or personal, solely because of its ownership, must be converted into direct taxes, because it is conceived that it would be demonstrated by a close analysis that they could not be shifted from the person upon whom they first fall. As a mere abstract, scientific, or economical problem, a particular tax might possibly be regarded as a direct tax, when as a practical matter pertaining to the actual operation of the tax it might quite plainly appear to be indirect. Under such circumstances, and while varying and disputable theories might be indulged as to the real nature of the tax, a court would not be justified, for the purpose of invalidating the tax, in placing it in a class different from that to which its practical results would consign it."

Further, in New York Trust Co. v. Eisner, 256 U. S. 345, at 349, 41 S. Ct. 506, 507 (65 L. Ed. 963, 16 A. L. R. 660), in construing the 1916 act, it is said: "On the practical and historical ground that this kind of tax always has been regarded as the antithesis of a direct tax—'has ever been treated as a duty or excise, because of the particular occasion which gives rise to its levy.'"

III. The most serious attack made is that the section, in essence, is a tax upon a past transaction—a completed transfer. From the statement of facts it will be observed, and must be conceded, that when Mr. Reed created this trust, in 1902, the transfer was not taxable, as there was no statute similar to the one in question then in existence or contemplated by Congress. So in all fairness it cannot be said that it was an attempt to avoid the payment of any inheritance or legacy taxes—at least so far as the federal government was concerned. It may also be granted that the decedent made an irrevocable transfer of the legal title of the corpus of the trust to the trustee, and to that extent, at least, it had ceased to be his property.

[4, 5] It is urged that this transfer was complete and absolute the instant the trust was created, and that when Mr. Reed died nothing passed from him to the cestui que trusts—that the life interest he had simply ceased; further, that the beneficiaries owned the property in question before his death, although they did not come into the enjoyment of it until afterwards. But let us examine this interesting contention so forcibly advanced, bearing in mind the language of the Pollock Case, 157 U. S. 581, 15 S. Ct. 673, 39 L. Ed. 759, that it is the substance and not the form which controls, and also the same case on rehearing, 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108, where the court pointed out that ownership of the products of the farm, and the rents of real estate, were important in considering where the ownership of property lay. Up to the time he created the trust Mr. Reed was the absolute owner of the securities in question. The transfer to the trustee, so far as it went, was irrevocable; yet it did not pass as full or complete a title as he had. Therefore, if the interest he transferred to the trustee was less than what he had, a remainder or residuum of the title remained in him.

It is clear to me that he reserved a con-

siderable interest in the securities. He retained, to quote again from the Pollock Case, "that which gives value to property," the beneficial interest. He continued to enjoy the income as before the transfer. He had a right of action against the trustee for waste, and could assign or transfer his life interest, in whole or in part, as he might see fit. His income therefrom was not fixed, but still subject to any fluctuations in the dividends or interest earned by the securities the same as before the conveyance.

The question is: Did the beneficiaries have as extensive a title the day after the trust was created as the day after Mr. Reed died? The big thing for them, and what Mr. Reed desired to give them, was the income. This depended absolutely on his death. So, from a practical point of view, it cannot be said that the event of Mr. Reed's death was of no consequence to them. At no time did they have the legal title, and not until his death did they get any benefits. Before his death all taxes levied against this property were presumably paid by the trustee out of income, and thus borne by Mr. Reed. It therefore follows that Mr. Reed, at the time he created the trust, did not entirely divest himself of the full title to the property in question. The beneficiaries by that act alone did not get all that he intended them to have eventually; so the transaction was not fully completed until he died.

[6, 7] But let us assume, for the sake of argument, that the act does, as alleged, tax a transfer completed before it was enacted; nevertheless, its constitutionality is sustained by the weight of authority of the lower courts that have had occasion to consider it. In Shukert v. Allen, Collector (C. C. A., Eighth Circuit, May 16, 1925) 6 F.(2d) 551, the court passed on a somewhat similar state of facts, and under the 1918 act held that, while the transfer took effect immediately, the trust created did not take effect until after the death of the grantor.

In Mercantile Trust Company v. Hellmich (unreported, Eastern District of Missouri), a spendthrift trust was created in June, 1912, by the grantor for his own benefit—the remainder to his heirs. The grantor died in 1920. Judge Faris held that the property which came to one of the beneficiaries came to her only upon the death of the grantor, and therefore was liable for the tax imposed by subdivision (c) of section 402, supra.

In Cleveland Trust Co. v. Routzahn, Collector, 7 F.(2d) 483, July 1, 1925, Judge Westenhaver, in the Northern district of Ohio, held that the retroactive provisions of the 1918 act did not violate the federal Constitution. In Shwab v. Doyle, 269 F. 321, the Sixth Circuit held the corresponding provisions of the 1916 act to be retroactive, and applicable to transfers made before it took effect by those who died after, and constitutional. This case was reversed by the Supreme Court, but on the other grounds, as already stated.

Coolidge v. Nichols (D. C. Mass.) 4 F.(2d) 112, is relied on by plaintiff, but is not in point. There the grantors, after creating a trust somewhat similar to the instant case, assigned by a subsequent instrument all their interest in the trust fund, including their right to receive the income therefrom, to the beneficiaries. This would seem to be a recognition of the fact that the first transfer did not completely divest the grantors of the estate conveyed. The court naturally, it seems to me, held that the two instruments taken together constituted a completed transaction. Judge Brewster said it was entirely proper to measure the tax in question by the value of the property transferred by will or by intestate laws, and that it was not unreasonable to measure the tax, also, by the value of property the decedent had made a disposition of during his lifetime, as it partakes of the nature of a testamentary disposition, saying: "Whether the transmission be by will, by intestate laws, or by transfers to take effect on or after or in contemplation of death, the transmission bears in each case a reasonable relation to the event of death"— and added that, after examining all the authorities, he could not say that Congress did not have authority to give retroactive effect to a law providing an indirect tax.

Lewellyn v. Frick (U. S. Supreme Court, May 11, 1925) 268 U. S. 238, 45 S. Ct. 487, is not in point. The court did not consider the constitutional question, but simply held that another section, to wit, section 402f (Comp. St. Ann. Supp. 1919, § 6336¾c), did not apply to the proceeds of insurance policies taken out by the deceased in the name of beneficiaries prior to its passage. The insurance money was never the property of the decedent Frick. The retroactive features of the 1918 act have never been passed upon directly by the Supreme Court, but it has considered various features of retroactive legislation in many cases.

In Shwab v. Doyle, supra, the Supreme Court discusses subdivision (c) of both acts. It says that statutes are not to be construed as applying to cases arising before their passage, unless that intention is clearly expressed. It quotes with approval the com-

ment of Story that retroactive laws in principle are unjust, and that there is an absolute prohibition against them when their purpose is punitive. In other cases where the question of retroactivity is involved the court will exact (page 534 [42 S. Ct. 392]) "clearness of declaration when burdens are imposed upon completed and remote transactions, or consequences given to them of which there could have been no foresight or contemplation when they were designed and consummated," and (page 535 [42 S. Ct. 392]) "there is certainly in it no declaration of retroactivity, 'clear, strong, and imperative,' which is the condition expressed in United States v. Heth, 3 Cranch, 398, 413 [2 L. Ed. 479]; also United States v. Burr, 159 U. S. 78, 82, 83 [15 S. Ct. 1002, 40 L. Ed. 82]. If the absence of such determining declaration leaves to the statute a double sense, it is the command of the cases that that which rejects retroactive operation must be selected." And for this reason alone the 1916 act was not given a retroactive construction. See, also, Fullerton v. Northern Pacific Ry. Co., 266 U. S. 435, 45 S. Ct. 143, 69 L. Ed. 367.

Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, held an income tax was not unconstitutional because it provided for a limited retroactive operation, and the numerous authorities there cited show that the question had been before the court many times.

In conclusion, it may be said that the Supreme Court has refused to give retroactive effect to statutes only when they are punitive, or do not comply with the above rule of construction. It will be observed, however, that when the act in question complies with this requirement they have never been declared unconstitutional. Admitting that plaintiff has established that the provision of the 1918 act in question, as it affects the case at bar, is contrary to recognized principles of taxation and economics, yet a painstaking examination of the authorities, when examined in the light of the rule that "every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt" (Sinking Fund Cases, 99 U. S. 700, 25 L. Ed. 496), forces the conclusion that the unconstitutionality of the retroactive provision of the 1918 act has not been demonstrated beyond a rational doubt.

The plaintiff's demurrer to the answer is overruled.