### STARK et al. v. UNITED STATES et al.

(District Court, S. D. Ohio, W. D.  May 28, 1926.)

No. 3614.

1. **Internal revenue** ⚖⇒38(9)—**Residuary legatees, though not necessary parties, were proper parties plaintiff to executor's action to recover federal estate tax paid under protest (Gen. Code, Ohio, § 11254; Revenue Act 1918).**

Under Gen. Code Ohio, § 11254, residuary legatees, including corporate trustee of char-itable trust, though not necessary parties plaintiff to action by executor to recover federal estate tax illegally assessed under Revenue Act 1918 (40 Stat. 1057), and paid under protest, were proper parties plaintiff.

2. **Action** ⚖⇒50(4)—**Cause of action against United States to recover federal estate tax erroneously or illegally assessed held improperly joined with similar cause of action against collector.**

Cause of action against United States to recover federal estate tax erroneously or illegally assessed, with trial to court, *held* improperly joined with cause of action against collector, in which either party may demand jury trial and which arises under different statutes providing different remedies.

3. **Internal revenue** ⚖⇒8(10)—**Federal estate tax is intended to include in taxable estate all property conveyed by trust or otherwise, possession or enjoyment of which is postponed until grantor's or donor's death (Revenue Act 1918, §§ 401, 402 [Comp. St. §§ 6336¾b, 6336¾c]).**

Revenue Act 1918, §§ 401, 402 (Comp. St. §§ 6336¾b, 6336¾c), is intended to include in taxable estate all property conveyed by decedent during his lifetime, by trust or otherwise, in which legal or equitable interest, possession, and enjoyment is intended to be postponed until grantor's or donor's death.

4. **Internal revenue** ⚖⇒8(10)—**In determining whether "possession and enjoyment" of trust is intended to be postponed until donor's death, substance rather than form controls (Revenue Act 1918, §§ 401, 402 [Comp. St. §§ 6336¾b, 6336¾c]).**

In determining whether "possession and enjoyment" of beneficial interest of beneficiaries of trust other than donor is intended to be postponed until donor's death, so as to be taxable under Revenue Act 1918, §§ 401, 402 (Comp. St. §§ 6336¾b, 6336¾c), substance rather than form controls.

5. **Internal revenue** ⚖⇒8(10)—**Trust for donor's benefit for life but not beyond specified date, and thereafter for benefit of his sons, with right in donor to alter, modify and revoke, held subject to estate tax (Revenue Act 1918, §§ 401, 402 [Comp. St. §§ 6336¾b, 6336¾c]).**

Trust created by 65 year old donor for his own benefit for life but not beyond specified date about eight years after date of trust, after which date or donor's death, whichever first happens, trust is to be divided for benefit of donor's two sons, reserving in donor right to control investments and to alter, modify, or revoke trust, *held* testamentary in character, making fund subject to estate tax under Revenue Act 1918, §§ 401, 402 (Comp. St. §§ 6336¾b, 6336¾c).

6. **Trusts** ⚖⇒112.

Donor of trust must be held to intend obvious and necessary result of his deed, and, in absence of ambiguity, there is no room for interpretation.

**7. Evidence ⊗═269(2)—Neither donor's declaration nor acts are admissible to negative clear testamentary character of trust to avoid liability for federal estate tax (Revenue Act 1918).**

Where creation of trust by deed is clearly testamentary, neither donor's declarations before or after execution thereof or acts after execution are admissible to negative his clearly expressed intent in, order to avoid federal estate tax under Revenue Act 1918 (40 Stat. 1057).

At Law. Action by Edgar Stark, executor of the last will and testament of Jacob G. Schmidlapp, deceased, and others, against the United States and another. On defendants' demurrer to petition. Demurrer sustained.

Maxwell & Ramsey and Jos. S. Graydon, all of Cincinnati, Ohio, for plaintiffs.

Haveth E. Mau, U. S. Atty., and Simon Ross, Asst. U. S. Atty., both of Cincinnati, Ohio, and T. H. Lewis, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for defendants.

HICKENLOOPER, District Judge. The petition is drafted in the form of two separate causes of action. By the first cause of action the plaintiffs seek to recover from the United States the sum of $312,058.60, with interest, which, it is alleged, was illegally assessed, and paid under protest, as federal estate tax under the Act of Congress approved February 24, 1919 (40 Stat. 1057), under the following circumstances:

Under date of January 14, 1915, the decedent, Jacob G. Schmidlapp, executed a certain deed of trust to the Bankers' Trust Company of New York, whereby he transferred to such Bankers' Trust Company approximately $3,000,000 of investment securities with power to hold such properties, together with all other property that might thereafter be added thereto, to collect and receive the rents, issues, interests, and profits thereof, and, after paying all proper charges and expenses of the trust, including the commissions to the trustee, "to pay and apply the remainder of said rents, issues, interests and profits quarterly to the use of the donor during his lifetime, but not subsequent to the 10th day of August, 1923, except as hereinafter provided."

This deed of trust further provided that, "upon the death of the donor, or upon the 10th day of August, 1923, should the donor be living at that time," the trustee was directed to divide the principal of the trust fund into two equal parts, to be held for the use and benefit of the donor's two sons. Provision was made for distribution of the income and principal in the event of the death of either of said sons, which provisions are not here important.

By the second item of this trust deed, it is also provided: "The trustee is hereby authorized and empowered to retain any and all of the properties above mentioned in their present form, and also such additional securities as the donor may, from time to time, add to the trust estate. All investments or reinvestments made by the trustee shall be subject to the control and direction of the donor during his lifetime, and the trustee shall be fully protected," etc.

And by the sixth item it is provided: "Notwithstanding anything to the contrary herein contained, the donor at any time or times during the continuance of the trust herein provided for may, by instrument in writing executed and acknowledge or proved by him in the manner required for a deed of real estate (so as to enable such deed to be recorded in the state of New York) delivered to the trustee, or its successors, modify or alter, in any manner, or revoke in whole or in part this indenture, and any or all of the trusts then existing and the limitations and estates and interest in property hereby created and provided for subsequent to such trusts; and, in case of such revocation, said instrument shall direct the disposition to be made of the trust funds or any part of the trust funds affected by such revocations, and upon delivery of such instrument to the trustee, or its successor, the said instrument shall take effect according to its provisions and the trustee or its successor shall make and execute all such instruments, if any, and make such conveyance, transfers and deliveries of property as may be necessary or proper in order to carry the same into effect, and no one, born or unborn, shall have any right, interest or estate under this indenture, except subject to its proper modification, alteration and revocation."

The creator of this trust died on December 18, 1919, his two sons surviving him. The value of the trust res as of that date was included in the valuation of the taxable estate upon the hypothesis that the trust so created was intended to take effect in possession and enjoyment upon the donor's death.

The second cause of action seeks to recover from Charles M. Dean, as collector of internal revenue for the First district of Ohio, the sum of $25,295.13, with interest, which, it is claimed, was wrongfully assessed, and paid under protest, as additional

federal estate tax. The second cause of action contains no allegation of application for refund, which was presented to the Commissioner of Internal Revenue, and rejected by him. Such application for refund and subsequent rejection are alleged as to the first cause of action.

The defendants demurred to the petition upon the grounds: (1) That there is a misjoinder of parties plaintiff, the residuary legatee of the decedent being joined as party plaintiff; (2) because there is a misjoinder of parties defendant; (3) because the first cause of action does not state facts sufficient to constitute a cause of action; and (4) because the second cause of action does not state facts sufficient to constitute a cause of action.

[1] Upon argument, the court stated from the bench that we were of the opinion that there was no fatal misjoinder of parties plaintiff. While a suit might have been brought and maintained by the executor of the estate of Jacob G. Schmidlapp, deceased, alone, there is certainly no prejudice to the defendants in joining the residuary legatees under the will, as having an interest in the subject-matter of the litigation. The estate tax was paid by the executor from the assets of the estate and without recourse upon the children of the decedent; the beneficiaries in remainder under the trust agreement. By reason of such payment, the residuary interest of the Union Trust Company of Cincinnati, a testamentary trustee for charitable uses, was manifestly decreased. We are still of the opinion that such Union Trust Company of Cincinnati is a proper party plaintiff under the provisions of the Ohio General Code, § 11254, although not an indispensable or even necessary party to the action. The trial being to the court upon this first cause of action, the assertion of the charitable nature of the interest of the Union Trust Company of Cincinnati cannot operate to prejudice the government's cause nor to create favor for the plaintiff. The first ground of demurrer is overruled.

[2] The second ground of demurrer must be sustained. There is manifestly a misjoinder of parties defendant; or at least there is a misjoinder of separate causes of action against the several defendants. The suit against the United States, which is set forth in the first cause of action, is brought under the Act of Congress (42 Stat. 311) giving the District Court jurisdiction, concurrent with the Court of Claims, of any suit or proceeding commenced after the passage of the Revenue Act of 1921 (42 Stat. 227) for the recovering of any Internal Revenue Tax alleged to have been erroneously or illegally assessed or collected, even if the claim exceeds $10,000, if the collector of internal revenue, by whom such tax was collected, is dead, or is not in office as collector of internal revenue at the time such suit or proceeding is commenced. Under this enactment the trial is to the court. The action against the collector is under other provisions of law, and, in the trial of such cause, either party has the right to a jury trial. The two causes cannot be consolidated. They arise under different laws, and the remedies are essentially different. In announcing its conclusion at the argument, the court further held that the plaintiffs might elect as to which cause would be prosecuted in this action, and thereupon the plaintiffs elected, verbally, to pursue the first cause of action and to eliminate the second. The question of the capacity of the plaintiff to pursue the second cause of action without the claim for refund being first rejected by the Commissioner is therefore eliminated from the case, and the second cause of action, together with the defendant in such cause, the Collector of Internal Revenue for the First District of Ohio, will be dismissed.

Plaintiffs also assert the unconstitutionality of the Federal Estate Tax Act of 1918, as applicable to circumstances such as here involved. This question is saved by the plaintiffs as a matter of precaution, but is not urged nor argued. The question is therefore not here considered, but the act is accepted as valid under Shwab v. Doyle, Collector, 269 F. 321 (C. C. A. 6).

The only question remaining undetermined at the time of argument is as to the application of the provisions of section 402 of the Internal Revenue Act of 1918 (Act of February 24, 1919, c. 18, 40 Stat. 1057, 1097 [Comp. St. § 6336¾c]).

By section 401 (section 6336b¾):

"A tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act."

Section 402 (section 6336¾c) provides:

"That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—"

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which

he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment .at or after his death (whether such transfer or trust is made or created before or after the passage of this act), except in case of a bona fide sale for a fair consideration in money or money's worth.''

[3] The clear intent and purpose of this act is to include within the taxable estate all property which is conveyed, by trust or otherwise, by the decedent during his lifetime, but in which either the legal interest or the equitable interest, the possession and enjoyment, is intended to be postponed until the death of the grantor or donor. In considering this question, the distinction must not be lost sight of between a transfer intended to take effect upon death—a gift causa mortis—in which the actual passing of legal title is conditioned upon, or postponed until, the subsequent death of the grantor or donor, and the creation of a trust by the terms of which legal title passes immediately to the trustee, but the possession and enjoyment by the beneficiaries is postponed until after the death of the grantor or donor. So far as it applies to trust estates, the portion of the act quoted has reference to the actual possession and enjoyment of the beneficial interest. It has no reference to the conveyance of the legal title or to the vesting of either legal or equitable interest. So far as it operates to convey a property right taking effect ''in possession or enjoyment'' at or after death, such trusts are testamentary in character, performing the same practical function as a will. In the case of Shwab v. Doyle, supra, at page 324, the court says:

''The evident theory of the statute is that transfers intended to take effect after the death of the grantor, as well as those made in contemplation of death, are equally testamentary in character.''

And in Keeney v. New York, 222 U. S. 525, 536, 32 S. Ct. 105, 107 (56 L. Ed. 299, 38 L. R. A. [N. S.] 1139), cited by Judge Knappen, in speaking of the almost identical provisions of the New York Transfer Tax Law (Consol. Laws, c. 60, §§ 220–245), Mr. Justice Lamar says:

''It imposes a tax on transfers by descent, or will, which take effect at the death of the testator; and then a tax upon transfers made in contemplation of death. It was but logical to take the next step, and tax transfers intended to take effect at or after the death of the grantor—even though

that event was not actually impending when the deed was signed.''

Two contentions are made by the plaintiffs; the first being that, since the trust deed expressly provided for the possession and enjoyment of the beneficial interest of the trust by the children of the donor from and after the 10th day of August, 1923, notwithstanding that the donor was living at that time, it must be conclusively presumed that the donor intended that the trust created should not take effect in possession and enjoyment at the expiration of a term of years, as distinguished from the dropping of a life (his own), and that the reservation of a power of appointment, of alteration or of revocation by the donor during his lifetime, was immaterial as indicating a contrary intention. But, if this intention as drawn from the instrument is not to be considered as conclusive, it is contended (2) that the question of intent is a question of fact to be determined, not only from the instrument itself, but from the circumstances surrounding the donor, his age, his condition of health, his expectancy of life, the age of his two children who were made beneficiaries and even his declarations and acts subsequent to the execution of the document. It is therefore contended that the matter may not be decided upon demurrer, but that the court must determine the nature of the donor's intent from evidence adduced.

In development of this position, plaintiffs contend that the language of the act, ''to take effect in possession or enjoyment,'' was taken from the recognized and established definition of a remainder at common law, and that, at common law, where a future estate is limited upon a term of years, but ''the term is rendered determinable by means of a special or collateral limitation, or the dropping of a life or lives, and it is for so few years that there is a common possibility of the life or lives enduring beyond it,'' the freehold remainder is one dependent upon the term of years. On the contrary, ''where it is for so great a number of years that there is not a common possibility of the life or lives enduring beyond it,'' the remainder is considered dependent upon the life estate and not on an estate for years. Fearne on Remainders (4th Am. Ed.) vol. 1, § 114. This, it is said, is the present case. But in the text cited the major premise is that the future estate is ''limited upon a term of years,'' and the condition subsequent which serves to accelerate the enjoyment of the future estate is the dropping of a life or lives. The text illus-

trates how, in the absence of a common possibility of the prior estate enduring beyond a determinating event, the dropping of a life or lives (this being a condition subsequent which is bound to happen), the very nature of the condition gives character to the prior estate and raises it to the dignity of a freehold interest. But this is essentially different from the contention that, where the present estate is a life estate, but determinable upon a collateral or special limitation, the freehold interest will be converted into one of lesser dignity because there is a common possibility that the condition may happen before the termination of the life estate. There is likewise a common possibility that the life estate may be terminated by the dropping of the life before the happening of the condition. Under such circumstances the estate must retain its freehold character, though that estate be a determinable one.

Otherwise expressed, it is not suggested that, if the possession and enjoyment were postponed alone for the life of Mr. Schmidlapp, it would not then be conclusively presumed that such remainder was intended to take effect in possession and enjoyment at his death. See Shukert v. Allen (C. C. A.) 6 F. (2d) 551; Matter of Brandreth, 169 N. Y. 437, 62 N. E. 563, 58 L. R. A. 148. Can he, therefore, by adding a condition which may or may not in all common possibility accelerate the falling in of the remainder, change the nature of his life estate to one for a term of years? We do not think so. His life estate still remains a life estate, though, through the happening of an uncertain contingency, it may be terminated before his death. Until the happening of the contingency the situation is unchanged, and the contingency in fact never happened. Mr. Schmidlapp died a life tenant of the beneficial interest in his trust estate.

[4, 5] But the case need not be decided upon application of technical rules of common-law conveyancing or the ancient law of real property. The language of the act is unambiguous. If the "possession and enjoyment" of the beneficial interest of the beneficiaries, other than the donor, be in fact intended to be postponed until after the death of the donor, the case falls squarely within both the letter and spirit of the act. And in determining this question "substance rather than form is to be given controlling weight." See, by analogy, Bowers v. Kerbaugh-Empire Co., 46 S. Ct. 449, 70 L. Ed. ——, decided by the Supreme Court May 3, 1926, citing Eisner v. Macomber, 252

U. S. 189, 206, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. So also, "possession and enjoyment" would seem to comprehend a finality of the definition of the beneficiaries' rights, not a mere enjoyment at the will and by the grace of the founder of the trust. While the reservation of a right of revocation or a power of appointment to other uses may not operate to invalidate a settlement until such powers are exercised, or create a property right in the trust res on the part of the donor (Jones v. Clifton, 101 U. S. 225 [25 L. Ed. 908]), the reservation of a plenary power to "modify, alter or revoke," when considered with the rest of the instrument, would seem to have very substantial bearing upon whether the donor intended that the beneficiaries should acquire any independent, definite, and final rights in the property prior to the donor's death. The reservation of such powers is peculiarly instructive upon the question of the intent of the donor, not as to when the remainder should vest, but as to when it should be possessed and enjoyed in its entirety and as of right.

If substance rather than form be given controlling weight, we have here a clearly expressed reservation of a life interest in the income of the trust, terminable only by death or, contingently, if the donor lives until August 10, 1923. The reservation of the right of control of investments, and of the right of alteration, modification, or revocation—that is, in substance, the reservation of the power to retain all beneficial interests to himself—both before and after August 10, 1923, is for the grantor's life. "No one, born or unborn, shall have any right, interest or estate under this indenture, except subject to the proper modification, alteration and revocation" until, it is clear, after the donor's death. He has reserved to himself for life all the powers and rights ordinarily incident to ownership: Possession, control, enjoyment, disposition. He has withheld from his sons all of these incidents during his lifetime except as he may, from time to time, continue to be disposed to dispense his gratuity. See McCaughn v. Girard Trust Co., 11 F. (2d) 520 (C. C. A. 3). The trust company was little more than a bailee of securities or agent for management of the estate. Technically, the interest of the beneficiaries may have vested as a defeasable, equitable remainder, dependent upon a life estate or term of years, but it was so nebulous as to be an interest in form only and not in substance. In essence and effect, the nature of the trust created

was testamentary. As long as the donor lived, he was to retain unto himself all attributes of beneficial ownership. When he died, the enjoyment of the property passed to others as effectively as though bequeathed by will. The nominal gift with power of revocation does not detract from the very apparent testamentary character of the instrument, for revocability is one of the inherent or intrinsic elements of a will. It emphasizes rather than militates against this view We cannot but believe that the disposition here involved was intended to be testamentary in character and as such within the act.

Had the decedent survived until after August 10, 1923, and had the trust then taken effect in possession and enjoyment, subject only to modification or revocation, the trust res could not have been included in the taxable estate unless the trust were held to have been created in contemplation of death (as might well be under Shwab v. Doyle, supra, 327 et seq.). But this would not have been because of the original intent of the grantor, but because possession and enjoyment, not having in fact been postponed until the death of the grantor, the transfer of the equitable interest was completed inter vivos, and, as in every other case of completed transfer, the only question then would be whether such transfer was in contemplation of death.

The only question remaining is whether the presence of an allegation in the petition that said trust "was not intended to take effect in possession and enjoyment upon the death of the donor" is admitted by the demurrer and necessitates the hearing of evidence. We are inclined to think that it does not. The age of Mr. Schmidlapp in 1915—65 years—is conceded in argument. The practical termination of his business career by that date would probably also be conceded. He was at least no longer young and had virtually retired from active business. He was putting his house in order for the future, though death did not seem impending. If the issue were whether the trust was created in contemplation of death, evidence of these facts and of other facts must of necessity be received, since the burden is then on the government to prove such

state of mind. But such facts would have only remote or collateral effect in proving whether the trust was or was not intended to take effect at or after the donor's death. [6] The donor must be held to intend the obvious and necessary result of his solemn deed. Where there is no ambiguity in the instrument itself, there is no room for interpretation. Here we have neither patent nor latent ambiguity. The deed of trust, in legal effect, created a life estate in the donor. All its provisions demonstrate that this was not unintentional but, on the contrary, that it was affirmatively intended to postpone enjoyment and possession by the remaindermen until after the donor's death. It was clearly intended so to do if death occurred before the happening of the contingency, which under the admitted facts might well come to pass in eight years. And even after August 10, 1923, the interests of the beneficiaries were not fixed and definite, but more in the nature of expectancies than of actual rights. The control thereafter existing but emphasized the intent otherwise appearing. Certainly, in the face of this, declarations of intent would not be admissible, and other evidence would throw but little light upon the subject of our inquiry.

[7] Where the donor has in fact and in law reserved a life estate to himself and by forcefully appropriate language has evidenced an intention to postpone possession and enjoyment of the remaindermen until his death, certainly if such death occur before a designated future date, and where, even after that date, he has so limited the falling in of the remainder as a fixed estate as of right as to show definite intention to retain all incidents of beneficial ownership, the trust must be construed as testamentary in character, and neither declarations before nor after the execution of the deed, nor acts after such execution, can be received to negative such clearly expressed intent.

The demurrer must be sustained to the first cause of action. As already said, it is unnecessary in this action to pass upon the fourth ground of the demurrer, viz. that the second cause of action does not state a valid cause for relief.