TIPS et al. v. BASS, Collector of Internal Revenue.

District Court, W. D. Texas, Austin Division. April 25, 1927.

Supplemental Opinion June 13, 1927.

No. 1100.

1. Internal Revenue ⬥⟿38(9)—All heirs of decedent held proper parties plaintiff in action to recover estate tax paid.

In an action to recover estate tax as illegally exacted, all heirs of decedent are proper plaintiffs, though the petition for refund, filed on behalf of the "estate," was not signed by all.

2. Internal revenue ⬥⟿8(11)—Transfer of property by woman to children held not made in "contemplation of death" (Revenue Act 1921, § 402 (c), being Comp. St. § 6336¾c).

A widow who received a large estate from her husband, including stock in various corporations, and who, being unused to the transaction of business, when 68 years old transferred a large part of the property to children, taking from them notes by which each was to pay her $5,000 annually during her lifetime. She was then in excellent health and remained so until shortly before her death from pneumonia four years later. *Held,* that the

transfer was not one made in "contemplation of death," within Revenue Act 1921, § 402 (c), being Comp. St. § 6336¾c.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contemplation of Death.]

3. Words and phrases—"Enjoyment" defined.

"Enjoyment" means that which gives value to property, and includes beneficial use, interest, and purpose to which property may be put.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Enjoyment.]

4. Internal Revenue ⬥⟿8(13)—A part of property transferred by a decedent held subject to estate tax (Revenue Act 1921, § 402(c), being Comp. St. § 6336¾c).

Where, however, by an arrangement made at the time of the transfer, the property was retransferred by the children to a trustee as security for their annuity notes, they did not come into possession and enjoyment, until their mother's death, of such percentage of it as was required to, and actually did, produce sufficient income to pay the notes, and such percentage should be added to her remaining estate for the purpose of computing the estate tax thereon, in view of Revenue Act 1921, § 402 (c), being Comp. St. § 6336¾c.

At law. Action by Eugene Tips and others against James W. Bass, Collector of Internal Revenue. Judgment for plaintiffs for part of claim.

White, Wilcox & Taylor, J. Harris Gardner, and Black & Graves, all of Austin, Tex., for plaintiffs.

John D. Hartman, U. S. Atty., of San Antonio, Tex., and Frank J. Ready, Jr., of San Antonio, Tex., and Fred V. Lowrey, Special Attys. for Bureau of Internal Revenue, of Washington, D. C., for defendant.

WEST, District Judge. Plaintiffs, the children and heirs at law of Mary J. Tips, deceased, sued for refund of $16,443.76 exacted by the defendant, because illegally assessed and collected as a tax imposed by section 402 (c) of the Act of Congress of November 23, 1921 (Comp. St. § 6336¾c), which provided that the value of the gross estate is to be determined by its value at the time of the death of decedent: "402 (c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, [a] in contemplation of * * * death," "or [b] intended to take effect in possession or enjoyment at or after his death. * * *"

The dispute centers on transfers of property made during the lifetime of decedent on September 10, 1918, of the value of $517,000. The value of the net estate other than the

property transferred is less than the statutory exemption of $50,000. Mrs. Tips died July 26, 1921. Plaintiffs deny that the transfers were made either in contemplation of death, or were intended to take effect in possession or enjoyment at or after death.

The following facts are stipulated: That on September 10, 1918, decedent conveyed by warranty deed, Exhibit A, to three of her children, in equal portions, certain real estate of the value of $86,000; that on the same date and by separate instrument, Exhibit B, decedent transferred and conveyed to the same grantees, in equal portions, shares of stock in various corporations, together with several promissory notes of the aggregate value of $431,362.53; that on the same date the three grantees, by their several promissory notes, exhibit C, each agreed to pay the decedent $5,000 per year, in quarterly installments, during her lifetime; that on the same date the grantees joined in the execution and delivery of an instrument, Exhibit D, transferring to Wilmot, as trustee in pledge, in addition to other property, all the stocks, notes, and securities which had theretofore on the same day been transferred and delivered to them by decedent, but did not include the real estate transferred to them in Exhibit A. Exhibit D was a collateral pledge agreement to secure payment of grantees' three annuity notes.

Defendant conceded that the conveyance of real estate, Exhibit A, took effect at the time of its execution without limitation or condition. The value of the property assessed should be diminished by the value of the real estate, $86,000, leaving the total value of the property transferred, Exhibit B, at $431,362.53, being the property pledged to Wilmot, trustee, Exhibit D.

[1] By an amended original petition, plaintiffs join a fourth child of decedent as party plaintiff. The defendant objects on the ground that the new party had not joined in the original claim for refund. The original claim was made to the defendant collector on behalf of the "estate" of decedent, and was considered by the collector as the claim of decedent's "estate." The four children, plaintiffs, are the heirs at law of decedent. There are no debts against the estate, nor is it being administered at law. Plaintiffs are in fact the legal heirs and representatives of the "estate." The court holds that the fourth child, Mary C. Von Kramer, is a proper party to the suit, and that the defendant's demurrer should be overruled.

[2] Was the transfer, Exhibit B, made in contemplation of death? Mrs. Tips at the time of the conveyance was about 68 years of age. The proof shows her to have been in unusually good health, robust, and of cheerful disposition, interested in the present and future welfare of her children and in the current events of the day. Likewise she was wholly lacking in knowledge and experience in business affairs and of the management of her property. It also appears that through the death of her husband in 1911 she came into the title and possession of a large estate, since which time she was continually being called upon to decide important business matters, to attend stockholders' meetings and conferences, and to sign important contracts and legal documents; that these matters so harassed and annoyed her that for her own peace of mind and in order to be spared the care incident thereto she concluded best to transfer all of her property to her children, they to give her a sufficient annual income to provide her with the necessities and comforts to which she had been accustomed; that up to the time of her death the decedent, then 72 years of age, was in good health, and that her death came after a few weeks illness, and was occasioned by acute pneumonia. More than two years had passed since the making of the transfer in question, leaving the presumption that it was made in contemplation of death no longer existing. The evidence is barren of any proof that it did so exist. In these circumstances it seems clear that the transfer was not made in contemplation of death, and the court so holds. The recent case of Shukert v. Allen, Collector, 47 S. Ct. 461, 71 L. Ed. 764, opinion delivered by the Supreme Court of the United States March 21, 1927, supports the ruling of the court.

[3] Was the transfer, Exhibit B, intended to take effect in possession and enjoyment at or after death? Standing alone, the transfer by its terms is absolute. So considered there can be neither "contemplation of death" nor "intention to take effect in possession or enjoyment at or after death." But the law covering this tax is based upon the "intention" of the grantor." Instruments clear and certain in their terms, such as this transfer is, are not a subject for construction or interpretation. The defendant contends that the effect of the instruments, Exhibits B and C, when considered in the light of their contemporaneous executions, is that the title to the personal property passed and was actually delivered into the hands of grantees, but that their reconveyance of the same property and of the other property to the trustee, Wilmot, in pledge, to secure payment of the several

annuity notes, actually brought about a transfer and delivery of possession by the decedent to the joint trustee, who holds it in pledge until at or after decedent's death. The statute refers to "possession and enjoyment." The trustee's possession is a qualified and joint possession of the grantor and grantee. The word enjoyment means "that which gives value to property." Pollock v. Farmers' Loan & Trust Co., 157 U. S. 581, 15 S. Ct. 673, 39 L. Ed. 759. This includes the beneficial use, interest, and purpose to which the property may be put.

Reed v. Howbert (D. C.) 8 F.(2d) 641, holds that, where the trustee in possession was required to pay to decedent the entire income from the trust estate during lifetime, the value of such estate was properly subject to the transfer tax. In the case at bar the property was delivered to the grantees, but contemporaneously therewith they passed and delivered it to their joint trustee in pledge of their annuity notes. No default was made in the payment of these annuity notes; consequently the right to resort to the security was never vitalized. Though held in possession by their joint trustee, the grantees collected and received all the incomes from the property.

Plaintiffs claim that the transaction was completed by the delivery of possession to them; that their transfer to the trustee was voluntary, and was in no sense either a "transfer" or "trust" made by the decedent within the meaning of the act. On the contrary, the government contends that the effect of the contemporaneous execution of the instruments should be the controlling factor in arriving at the intent of the parties, and that the transfers, considered together, show that the decedent's apparently absolute conveyance was limited to her use and enjoyment as a pledge during her lifetime, or, conversely, that the transfer in trust did not take effect in possession or enjoyment until after her death, that the annuity of $15,000 should be considered as an obligation to pay that amount from the incomes received from the original property and not as an independent, personal, obligation of the notes.

[4] The court holds that a material limitation short of absolute conveyance and delivery is embraced within the terms "possession and enjoyment" as in this case, and that the tax should be assessable and computed on the basis of so much of the net estate as would be sufficient to produce the amount of annual annuity.

The court further finds that the several transfers, though not made in contemplation of death, resulted in decedent still holding, during her lifetime, through a joint trustee in pledge, the personal estate which she had contemporaneously passed to her children by deed of gift, the possession of which was in the trustee, charged with the duty of holding same during the lifetime of decedent, to secure payment of the annuities from the donees. In substance, the transfers, though in form legal and serving to accomplish their purpose as transfers, could not thereby defeat the tax obligation if there existed a taxable transfer of a net estate within the taxing act. These conclusions are supported by the following authorities: "Ante Mortem Deeds and Gifts, Taxation," 37 Cyc. 1567; "Transfers in Contemplation of Death, Taxation," 26 Ruling Case Law, 225; authorities cited in Cyc. and Ruling Case Law; Cleveland Trust Co. v. Routzahn, Collector (D. C.) 7 F.(2d) 483; Reed v. Howbert, Collector (D. C.) 8 F.(2d) 641; McCaughn, Collector, v. Girard Trust Co. (C. C. A.) 11 F.(2d) 520; Stark et al. v. United States (D. C.) 14 F.(2d) 616; Shukert v. Allen, Collector, supra; Coolidge v. Nichols (D. C.) 4 F.(2d) 112; Polk v. Miles (D. C.) 268 F. 175; Farmers' Loan & Trust Co. v. Bowers, Collector (D. C.) 15 F.(2d) 706; Schwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454.

In view of the foregoing, the court holds that for taxing purposes the annuity of $15,000 should be considered as an obligation to be liquidated from the incomes from the original property, and, considered as such, that the portion of said securities of value of an amount sufficient to yield that annual income would represennt the value of the gross estate, plus the actual estate of the decedent, which amounted to $32,397.68; that from the gross estate thus ascertained the funeral expenses and attorneys' fees, amounting to $472, together with the specific legal exemption of $50,000, should be deducted, which would give the net estate value upon which the percentage of taxes would be assessable.

Plaintiffs therefore would be entitled to judgment for the excess of taxes actually paid.

The judgment final, in accordance with the findings herein, will be prepared by plaintiffs and submitted to adverse counsel for approval and final presentment to the court.

### Supplemental Opinion.

A difference of opinion between counsel on opposing sides of the above cause having arisen, as to the meaning of a portion of the

memorandum opinion filed herein on April 25, 1927, now, at the request of counsel, the court makes the following supplemental findings in explanation and amplification of said memorandum opinion:

The proof in this cause shows that the personal property transferred by Mary J. Tips, deceased, on the 10th day of September, A. D. 1918, was property which then yielded an annual income which was reasonably definite and certain. Only so much, therefore, of the personal property transferred as was required to yield, and did actually yield, an annual income of $15,000 is taxable.

The average annual income actually produced by the personal property transferred, during the period from the date of the transfer to the date of the death of Mrs. Tips, was the sum of $28,209.56. An annual income of $15,000 amounts to 53.17 per cent. of the total annual income of the entire property transferred; therefore an annual income of $15,000 was produced during said period by 53.17 per cent. of the total property transferred. Thus 53.17 per cent. of $431,-362.53 (the stipulated total value) amounts to $229,355.45. I therefore find that, of the total personal property transferred according to the agreed valuation, property of the value of $229,355.45 was actually required to yield, and did actually yield, an annual income during the four-year period of $15,000.

To arrive at the value of the gross estate for purposes of taxation, there must be added to the above figure of $229,355.45 the sum of $32,397.68, the amount shown by the return to be taxable, making the gross estate of $261,753.13. Deducting from the value of the gross estate the exemptions amounting to $50,472, leaves the sum of $211,281.13 as the total net estate subject to the tax.